CHRISTIAN CHARLES HAUG, Individually and as Executor and Trustee of JOHN C. HAUG, Deceased, Appellant, *v.* HENRY J. SCHUMACHER et al., Individually and as Executors and Trustees of JOHN C. HAUG, Deceased, et al., Respondents, and JOHN WALTHER HILDENBRAND, Appellant.

1. WILL — WHEN PERSONAL PROPERTY IS INCLUDED IN CLAUSES CREATING LIFE ESTATES. Personal property as well as real estate passes by the residuary clauses of a will creating life estates, although such clauses specifically mention only the income, rents and revenues of lands and real estate, where such is the plainly indicated intention of the testator from the use of words particularly applicable to personalty, as well as from other provisions of the will.

2. VESTED REMAINDERS — SUSPENSION OF POWER OF ALIENATION. Valid future estates vesting at the time of the testator's death, where there are grandchildren in being, and not a trust causing an illegal suspension of the power of alienation, are created by a will providing that "immediately after" the death of those holding preceding life estates, all the estate shall go to the testator's grandchildren to be equally divided among them, *per capita,* since the expression "immediately after," as relating to the termination of the life-estates, does not postpone the vesting of the remainders, but merely refers to the period when the remainder-men shall become entitled to the estate in possession.

3. WHEN VALID LIFE ESTATES ARE CREATED. A valid life estate in testator's widow during her life or until her remarriage, and another in his two sons under condition that as to the latter the death of either son frees his interest from the life estate, and permits it to vest in the remaindermen and not in the surviving brother, are created, and not a trust by which the absolute power of alienation of the residuary property is illegally suspended, where the residuary clauses of a will give and bequeath to the widow the equal one-third part of all the income, rents and profits of the residue of testator's property for life or until her remarriage, giving and bequeathing the remaining two-thirds thereof to such sons equally, as well as the widow's portion upon her death or remarriage, and providing that immediately upon the death of the widow and sons all the said estate shall pass to the testator's grandchildren to be divided among them equally, share and share alike, *per capita.*

4. POWERS — REBUILDING OF BUILDINGS. A mere power is created by the provision of a will authorizing and empowering the executors to rebuild any buildings standing upon lands of the testator and which may become destroyed or dilapidated by fire or otherwise, and to use and employ any moneys or funds that may be in their hands belonging to the

estate for such purpose, a trust not being necessary to the carrying out thereof.

5. AFTER-BORN GRANDCHILDREN — PARTICIPATION IN RESIDUARY ESTATE. Grandchildren born after the death of testator are entitled to be admitted to the benefits of a residuary clause creating a remainder in fee in testator's grandchildren in the residuary property, but only as to the principal and accumulations held in the existing life estates at the time they are so admitted.

*Haug* v. *Schumacher*, 50 App. Div. 562, modified.

(Argued March 4, 1901; decided April 16 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 8, 1900, modifying and affirming as modified a judgment of Special Term construing the last will and testament of John C. Haug, deceased.

The nature of the action and the facts, so far as material, are stated in the opinion.

*E. Gaston Higginbotham* for plaintiff, appellant. It was clearly the intent of the testator to treat both of his sons and their issue equally and alike; and that he did not intend to work a disinheritance of and a discrimination against either of the sons or the issue of either. (*Wylie* v. *Lockwood*, 86 N. Y. 291; *Patchen* v. *Patchen*, 121 N. Y. 434; *Mullarky* v. *Sullivan*, 136 N. Y. 230.) As the provisions of the will suspend the power of alienation for a longer period than two lives, the same are void. (*Matter of Verplanck*, 91 N. Y. 445; *Phillips* v. *Davies*, 92 N. Y. 204; *Patchen* v. *Patchen*, 121 N. Y. 435; *Manice* v. *Manice*, 43 N. Y. 303; *Knox* v. *Jones*, 47 N. Y. 389; *Benedict* v. *Webb*, 98 N. Y. 460; *Kennedy* v. *Hoy*, 105 N. Y. 135; *Colton* v. *Fox*, 67 N. Y. 348; *Garvey* v. *McDevitt*, 72 N. Y. 563; *Ward* v. *Ward*, 105 N. Y. 68.) There are no persons in being by whom an absolute fee in possession can be conveyed, as the remainder in the real property after the respective life estates of the widow and two sons is either a remainder to all of the grandchildren of the testator living at the death of the wife and the death of the two sons or the death of the last of the three, and, therefore, contingent or is a remainder vested in the grandchildren living

at the death of the testator, but subject to be divested by their
death and subject to open and let in grandchildren born after
the death of the testator. (*Taggart* v. *Murray*, 53 N. Y.
237; *Kelso* v. *Lorillard*, 85 N. Y. 181; *Clark* v. *Cammann*,
160 N. Y. 325; *Patchen* v. *Patchen*, 121 N. Y. 435; *Mat-
ter of Baer*, 147 N. Y. 353; *Matter of Smith*, 131 N. Y.
239; *Matter of Allen*, 151 N. Y. 247; *Teed* v. *Morton*, 60
N. Y. 506; *Magaw* v. *Field*, 48 N. Y. 668; 2 Jarman on
Wills [6th ed.], 168; Schouler on Wills, § 530.) The testa-
tor died intestate as to all of his personal property except
such as he may have bequeathed by the first five clauses of
his will. (*Post* v. *Hover*, 33 N. Y. 598; *Matter of Vowers*,
113 N. Y. 571; *Tilden* v. *Green*, 130 N. Y. 51; *Phillips* v.
*Davies*, 92 N. Y. 204; *Bradhurst* v. *Field*, 135 N. Y. 568;
*Hyatt* v. *Pugsley*, 23 Barb. 298; *Macy* v. *Sawyer*, 66 How.
Pr. 381; *Clark* v. *Cammann*, 160 N. Y. 324; *Roe* v. *Vingut*,
117 N. Y. 212; *Patchen* v. *Patchen*, 121 N. Y. 435.)

*Abel Crook, A. Oldrin Salter* and *William H. Steinkamp*,
guardian ad litem, for defendant, appellant. In the construc-
tion and interpretation of wills the intention of the testator
must govern. Courts should not make a new will for a testa-
tor nor strain to support a testamentary plan in violation of
statutory provisions and well-recognized rules. (*McLean* v.
*Freeman*, 70 N. Y. 86; *Greene* v. *Greene*, 125 N. Y. 509;
*Clark* v. *Cammann*, 160 N. Y. 327; *Wadsworth* v. *Mur-
ray*, 161 N. Y. 284; *Goebel* v. *Wolf*, 113 N. Y. 412; *Scott*
v. *Guernsey*, 48 N. Y. 106; *Stevenson* v. *Lesley*, 70 N. Y.
512; *Smith* v. *Edwards*, 88 N. Y. 105; *Shipman* v. *Rol-
lins*, 98 N. Y. 311; *Delafield* v. *Shipman*, 103 N. Y. 463.)
The provisions of the will vest the entire estate, by implica-
tion, in the executors, as trustees. (*Ward* v. *Ward*, 105 N.
Y. 68; *Nicoll* v. *Walworth*, 4 Den. 385; *Brewster* v. *Striker*,
2 N. Y. 19; *Tobias* v. *Ketchum*, 32 N. Y. 326; *Knox* v.
*Jones*, 47 N. Y. 389, 397; *Amory* v. *Lord*, 9 N. Y.
403; *Boynton* v. *Hoyt*, 1 Den. 53; *Garvey* v. *McDevitt*,
72 N. Y. 556; *Tucker* v. *Tucker*, 5 N. Y. 408; *Sav-*

*age* v. *Burnham*, 17 N. Y. 561.) The interposition of the trust estate prevents vesting of any portion of the *corpus*˙ of the estate covered by the trust until the termination of the three designated lives. (1 Preston on Estates, 65; *Hayes* v. *Good*, 7 Leigh [Va.], 496; *Tayloe* v. *Gould*, 10 Barb. 396; *Griffin* v. *Shepard*, 124 N. Y. 70; *Sawyer* v. *Cubby*, 146 N. Y. 192; *Matter of Tompkins*, 154 N. Y. 634.) There is no legal presumption that issue of the two sons Frederick and Christian Haug may not come into being and be living at the termination of the three designated lives and hence belong to the class grandchildren. (*Apgar's Case*, 39 N. J. Eq. 501; *List* v. *Rodney*, 83 Penn. St. 482.) The test of suspension of the power of alienation is furnished by the statutes which have been codified in the Real Property Law. (*Gage* v. *Gage*, 43 Hun, 501; *Campbell* v. *Beaumont*, 91 N. Y. 464; *Campbell* v. *Rawdon*, 18 N. Y. 412; *Hersee* v. *Simpson*, 154 N. Y. 497; *Matter of Smith*, 131 N. Y. 246.) The inhibition against any sale of the real estate until after the termination of three designated lives, though invalid, cannot be ignored upon the question of intention. It is a vital part of testator's scheme, and, read with other provisions of the will, demonstrates his intention to tie up his estate as an entirety during such three lives. (*Henderson* v. *Henderson*, 113 N. Y. 1; *Tilden* v. *Green*, 130 N. Y. 29; Chapl. on Susp. Alien. § 480.) The rule that the limitation of remainders upon more than two successive estates for life, makes the life estate subsequent to those of the two persons first entitled thereto void, and on the death of the two persons first named, the remainder shall take effect as if no other lives had been introduced, has no application. (*Benedict* v. *Webb*, 98 N. Y. 460; *Kennedy* v. *Hoy*, 105 N. Y. 134; *Tilden* v. *Green*, 130 N. Y. 29.) A case of intestacy as to the personal property is presented. The absolute ownership of the personal property is unlawfully suspended and the income, meanwhile, is undisposed of. (*Tilden* v. *Green*, 130 N. Y. 29; *Post* v. *Hover*, 33 N. Y. 593; *Cochrane* v. *Schell*, 140 N. Y. 516; *Gould* v. *Rutherfurd*, 79 Hun, 280.)

*Alfred G. Reeves* for Henry J. Schumacher et al., respondents. The future estates and gifts provided for by the 9th clause of the will are absolutely vested in testator's grandchildren who were living at the time of his death. (*Clark* v. *Cammann*, 160 N. Y. 315 ; *Corse* v. *Chapman*, 153 N. Y. 466 ; *Hersee* v. *Simpson*, 154 N. Y. 497 ; *Nelson* v. *Russell*, 135 N. Y. 137; *Steinway* v. *Steinway*, 163 N. Y. 183; *Ackerman* v. *Gorton*, 67 N. Y. 63 ; *Livingston* v. *Green*, 52 N. Y. 118 ; *Moore* v. *Lyons*, 25 Wend. 119.) The Appellate Division is correct in holding that the testator meant the 7th and 8th clauses of the will to dispose of life estates in his residuary property, both real and personal. (*Allen* v. *Allen*, 149 N. Y. 280 ; *Tilden* v. *Green*, 130 N. Y. 29 ; *Roe* v. *Vingut*, 117 N. Y. 204; *Clark* v. *Cammann*, 160 N. Y. 315 ; *Henderson* v. *Henderson*, 113 N. Y. 1 ; *Greenwood* v. *Holbrook*, 111 N. Y. 465 ; *Matter of Logan*, 131 N. Y. 456 ; *Matter of Verplanck*, 91 N. Y. 439.) There is no trust created by the 7th or 8th clause of the will. The life estates provided for by those clauses are legal and valid. (*Greene* v. *Greene*, 125 N. Y. 506 ; *Mills* v. *Husson*, 140 N. Y. 99 ; *Vanderpoel* v. *Loew*, 112 N. Y. 167 ; *Campbell* v. *Beaumont*, 91 N. Y. 464 ; *Steinhardt* v. *Cunningham*, 130 N. Y. 292 ; *Van Schuyver* v. *Mulford*, 59 N. Y. 426 ; *Trolan* v. *Rogers*, 79 Hun, 507 ; *Matthews* v. *Studley*, 17 App. Div. 303 ; *Gage* v. *Gage*, 43 Hun, 501 ; *Jones* v. *Wittner*, 79 Hun, 283.) If the testator did not mean the 7th and 8th clauses of the will to dispose of life estates in his residuary personal property, then the only mention of that property is in the 9th clause of the will, and the gifts therein made of such personalty are valid, since they do not at all suspend the absolute ownership of the property nor violate any statute or rule of law. (*Sawyer* v. *Cubby*, 146 N. Y. 192 ; *Wilber* v. *Wilber*, 165 N. Y. 451.) The 6th clause of the will, which clause is clearly invalid, can be stricken out without affecting the other provisions. Neither that clause, nor the authority given to the executors to rebuild destroyed or dilapidated buildings, nor the substitution of Samuel Schumacher as executor if Henry J. Schumacher

should die before the final settlement of the estate, nor all of these combined, should be allowed to interfere with the carrying out of the provisions of the will which dispose of the testator's property. (*Manice* v. *Manice*, 43 N. Y. 303; *Greene* v. *Greene*, 125 N. Y. 506; *Roe* v. *Vingut*, 117 N. Y. 204; *Duncklee* v. *Butler*, 38 App. Div. 99; *Kennedy* v. *Hoy*, 105 N. Y. 134; *Schermerhorn* v. *Cotting*, 131 N. Y. 48; *Sanford* v. *Goodell*, 82 Hun, 369; Chaplin on Susp. Alien. § 482; *Henderson* v. *Henderson*, 113 N. Y. 1; *Van Schuyver* v. *Mulford*, 59 N. Y. 426; *Steinhardt* v. *Cunningham*, 130 N. Y. 292.)

*R. G. Babbage*, guardian ad litem, for John Haug et al., infants, respondents. The intent of the testator must prevail unless it clearly violates some principle of public policy. The language of the will must be construed, if possible, so that it will carry out his intent in a legal manner. Any construction which will invalidate its provisions or create an intestacy is not to be adopted unless there be no other reasonable legal construction. (*Williams* v. *Freeman*, 98 N. Y. 577; *Henderson* v. *Henderson*, 113 N. Y. 1; *Foose* v. *Whitmore*, 82 N. Y. 405; *Greene* v. *Greene*, 125 N. Y. 506; *Everitt* v. *Everitt*, 29 N. Y. 39; *Schermerhorn* v. *Cotting*, 131 N. Y. 48; *Roe* v. *Vingut*, 117 N. Y. 204; *Cochrane* v. *Schell*, 140 N. Y. 516; *Sanford* v. *Goodell*, 82 Hun, 369.) The provisions of the will dispose of the residuary personalty in the same manner as the realty, the same sections applying to both. (*Macy* v. *Sawyer*, 66 How. Pr. 381; Schouler on Wills, § 561.) Even if the remainders were not vested at the death of the testator, they will become so on the death of his two sons. The power of alienation cannot, therefore, be suspended for more than two lives. The individuals falling within the class of grandchildren will then be known. The existence of the widow cannot create any change. (*Wilber* v. *Wilber*, 45 App. Div. 158.)

BARTLETT, J. The testator died on the 26th of September, 1897, leaving him surviving his widow, Walburga Haug, two

sons, Christian Charles Haug, who had been married about nineteen years and had no issue, although his wife was still living; Frederick Ludwig Haug, who was married, whose wife was still living and had four children; also the defendant John Walther Hildenbrand, who is a grandson, then aged fifteen years and the only son of testator's deceased daughter, Louisa.

The real property of the testator is valued at about $114,000, subject to a mortgage of $12,000. The net amount of his personal property, after the payment of debts, is about $77,000.

The testator executed the will bearing date the 13th day of June, 1893, containing eleven clauses.

Upon this appeal no question is presented as to the construction of the first five clauses. The sixth clause, reading as follows: " It is my will and pleasure and I hereby direct that none of my real estate shall be sold until after the death of my said wife and my two sons," is confessedly invalid. The seventh, eighth and ninth clauses, which dispose of testator's residuary property, present the questions upon which this appeal is based.

The Special Term held that the ultimate gifts of the residuary property were contingent, or at least not absolutely vested in persons in being; and, that while the devises of the real property were valid, the gifts of the residuary personalty were void because the absolute ownership was suspended for three lives in being.

The Appellate Division unanimously decided that the seventh, eighth and ninth clauses read together dispose of all his residuary property, both real and personal; that by the ninth clause the ultimate remainders therein are vested absolutely in the testator's grandchildren who were living at the time of his death; and that by the seventh and eighth clauses life estates in the personal and real property were given to the testator's widow and two sons, in such a manner that not more than two successive life estates were to exist in any part of the property; that no trust is created in such residuary

property, but that the widow has a life estate in one-third of it until her death or remarriage; that each son has a life estate in one-third of it and in one-half of the widow's third if she die before him, and that after the death of each son the portion held by him is to vest absolutely in said remaindermen, the grandchildren of the testator who were living at the time of his death. Also, that if the widow outlives either son, then upon her death or remarriage the portion held by her, which would otherwise have gone to him for life, is to go absolutely to said remaindermen.

The appellants contend (1) that the remainders created by the ninth clause of the will are contingent, or at least not absolutely vested; (2) that the testator died intestate as to his residuary personal property; (3) that from the seventh and eighth clauses and the general tenor of the will a trust is to be implied by which the absolute power of alienation of the residuary property is illegally suspended.

In construing this will, it may be said at the outset that it discloses upon its face great confusion of ideas, and that it is not expressed in that clear and unmistakable language that should characterize such an instrument. We are of opinion, however, that by invoking two well-known canons of construction it may be held to contain a consistent testamentary scheme that does not contravene the statute against perpetuities. The first of these rules is the very familiar one that the intention of the testator must govern if it can be discovered; and the other is, that all portions of a will *in pari materia* must be read together.

It is always the effort of the court to sustain, if possible, the will of a testator and to give force and effect to the scheme that he has devised for the benefit of those depending upon him. A court is never swift to detect inaccuracies of expression, but rather inclined to read into the instrument such words as may give reasonable effect to its provisions.

A careful study of this instrument reveals, as it seems to us, this testamentary scheme : In the first five clauses of the will the testator provides for the payment of debts and specific

legacies. The sixth clause is admitted to be void and not necessary to be retained in order to sustain the will. The ninth clause reads as follows: " Immediately after the death of my said wife and the death of my said two sons, Frederick Ludwig Haug and Christian Charles Haug, I give, devise and bequeath all of my said estate, real and personal, to all of my grandchildren, to be divided among them equally, share and share alike, *per capita*, not *per stirpes*."

The appellants do not claim that this will upon its face, in express language, creates a trust, but they insist that a trust must be implied.

We are of opinion that the ninth clause vested absolutely in the testator's grandchildren who were living at the time of his decease, valid, future, vested estates, and that no trust exists.

We also hold that the seventh and eighth clauses of the will deal with personal property as well as real estate, creating valid life estates in the widow and the two sons. The seventh and eighth clauses read as follows: " *Seventh.* I give and bequeath the equal one-third part of all the income, rents, issues and profits of all the rest, residue and remainder of my lands and real estate of what nature and kind soever and whatever the same may be at the time of my death to my wife Walburga Haug for and during the term of her natural life or so long as she shall remain my widow and not marry again, in lieu of dower, the remaining equal two-thirds of the income, rents, issues and profits of my said lands and real estate, I give and bequeath to my two sons (naming them) to be divided among them equally, share and share alike. *Eighth.* Immediately upon the death of my said wife or her remarriage, whichever event shall first happen, I give and bequeath all the income, rents, issues and profits of my said lands and real estate to my two sons (naming them) to be divided among them equally, share and share alike." The two clauses quoted contain the imperfect wording of the will and the confusion of ideas to which we have adverted.

In addition to the rules of construction referred to, we are

to bear in mind that the law favors the vesting of estates and testacy rather than intestacy. It is possible by following the literal language and ignoring the plain intention of the testator to construe the seventh and eighth clauses as dealing exclusively with the real estate, as did the Special Term, and thus reach the conclusion that the personal property is not included in the creation of the life estates. It leads, however, to no violence of construction to hold that the personal and real estate are dealt with in both clauses. The language employed is such as is usually adopted by a testator in dealing with both kinds of property. The words " bequeath " and " of what nature and kind soever and whatever the same may be," are particularly applicable to personalty. We also find in the ninth clause the words " I give, devise and bequeath all my *said* estate, real and *personal.*" This clearly refers to the preceding clauses.

The fifth clause of the will, which is not in dispute, places two thousand dollars in trust for John Walther Hildenbrand, to be deposited in some savings bank or banks of good standing in the city of New York, the interest to be applied to his support and maintenance, or such portion of it as is necessary, during his minority, and on attaining the age of twenty-four years accrued interest and one-half of the principal to be paid over to him, and the balance with accumulations of interest to be paid to him when he attains the age of thirty-two provided he is a man of steady and sober habits. If he does not meet this requirement the principal sum is to be held for his benefit during life, and at his death to be divided between the two other sons equally, their heirs and assigns.

This shows very clearly that the testator meant to deal with his personal property in the seventh and eighth clauses of his will, as otherwise this grandson was immediately entitled when the will took effect to two-ninths of the income of the residuary personal property until the death of the widow and the two sons.

Coming again to the ninth clause, we have the language " Immediately after the death of my wife and the death of my

two sons (naming them) I give, devise and bequeath all my said estate, real and personal, to my grandchildren, to be divided among them equally, share and share alike, *per capita*, not *per stirpes*." Similar language to this has been frequently construed, holding that the residuary estate vested immediately upon the death of the testator.

In *Corse* v. *Chapman* (153 N. Y., page 466) this language is employed : " It is a well-settled principle of construction that the law favors the vesting of estates, and that the words ' from and after,' or like expressions as relating to the termination of the life estate, do not postpone the vesting of the estates in remainder until the death of the life tenant, but rather refer to the period when the remaindermen would become entitled to the estates in possession."

In the case last cited the language that was held not to imply a future vesting of the estate was much stronger than in the case at bar. It reads : " On the death of any child then the said trust as to his or her said one-eighth share shall cease, and I then devise the said share to my grandchild or grandchildren who may be the lawful issue of my said child so dying, and to his, her or their heirs and assigns forever.". It was held that " The word ' then ' is not an adverb relating to time, but means ' in that event,' and the present vesting of the estates in remainder is clearly contemplated by the scheme of the will."

It was also held in the case cited that while an absolute estate in remainder vested at the time of testator's death it might open and let in any grandchild or grandchildren born after that event as is provided in the will. As to the vesting of remainders at the time of testator's death see generally *Campbell* v. *Stokes* (142 N. Y. 23); *Allen* v. *Allen* (149 N. Y. 280); *Matter of Brown* (154 N. Y. 313); *Hersee* v. *Simpson* (154 N. Y. 497); *Wilber* v. *Wilber* (165 N. Y. 451).

Under the Revised Statutes we have estates in possession and in expectancy. 1 R. S. 723 (Banks 9th ed. vol. 2, p. 1789, § 7) provides : " Estates, as respects the time of their

enjoyment, are divided into estates in possession and estates in expectancy." Section eight reads : " An estate in possession, is where the owner has an immediate right to the possession of the land. An estate in expectancy, is where the right to the possession is postponed to a future period." Section nine reads : " Estates in expectancy are divided into (1) Estates commencing at a future day, denominated future estates : and, (2) reversions." Section ten defines a future estate as follows : "A future estate, is an estate limited to commence in possession at a future day, either without the intervention of a precedent estate, or on the determination, by lapse of time or otherwise, of a precedent estate, created at the same time." Section thirteen defines vested and contingent future estates as follows: " Future estates are either vested or contingent. They are vested, when there is a person in being, who would have an immediate right to the possession of the lands, upon the ceasing of the intermediate or precedent estate. They are contingent, whilst the person to whom, or the event upon which they are limited to take effect, remains uncertain." It is thus clear that under the ninth clause of the will we have valid, future, vested estates.

We agree with the learned Appellate Division that there is here no unlawful suspension of the power of alienation. The grandchildren who became vested with the estate at the death of the testator can convey an absolute estate in possession, as they are entitled to such an interest upon the ceasing of the respective intermediate life estates in the widow and the two sons. The estate of the grandchildren is in no sense contingent under the clear definition of the statute as to vested estates.

We also agree with the court below that the will created two life estates; one was in the widow during her life or until her remarriage, and the other was in the two sons, but under conditions as to the latter trust that the death of either of the sons freed his interest from the life estate and permitted it to vest in the granchildren and not in the surviving brother.

We are also of opinion that the tenth clause of the will cre-

ates a mere power, and that its provisions as to repairs to buildings, etc., can be carried out thereunder, and that no trust is necessary. The will as thus read discloses a very simple testamentary scheme; after the payment of the specific legacies the testator vests his entire estate, real and personal, in the grandchildren, subject to these two life estates. This construction sustains the will and disposes of all the property, real and personal.

The judgment of the Appellate Division should be modified so as to admit any grandchild born after the death of the testator to the benefits of the residuary or ninth clause of the will as to the principal and accumulations held in the existing life estates at the time said grandchild is so admitted, and as to no other portion of the property under said clause. As so modified, the judgment of the Appellate Division is affirmed, without costs to any of the parties except to the attorney for the guardian *ad litem*, who is entitled to the costs in this court payable out of the estate.

HAIGHT, J. (dissenting). This action was brought to obtain a construction of the will of John C. Haug, deceased. He died in the city of New York on the 26th day of September, 1897, leaving him surviving Walburga Haug, his widow, the plaintiff herein, and the defendant Frederick Ludwig Haug, his sons, and the defendant John Walther Hildenbrand, a grandson, the son of testator's deceased daughter, his only heirs at law and next of kin. The defendants Frederick William Haug, John Haug, Chester Amos Haug and George Haug are the grandchildren of the testator and the children of the defendant Frederick Ludwig Haug, and were all infants under the age of fourteen years at the time this action was commenced. The testator left an estate consisting of real property of the value of about $114,000, subject to a mortgage of $12,000, and of personal property valued at $77,000. His will was admitted to probate on the 26th day of May, 1898, and in it he first provides for the payment of his debts and funeral expenses. He then gives to his widow

the sum of $1,500, with certain household goods and furniture, to his son Christian his gold watch, to his son Frederick his iron safe, and then directs the investment of $2,000, giving the income therefrom, upon certain conditions, to his grandson Hildenbrand. No question is raised with reference to the validity of these clauses or to the construction that should be placed thereon. The controversy has reference to the 6th, 7th, 8th, 9th and 10th clauses. They are as follows:

"*Sixth.* It is my will and pleasure and I hereby direct that none of my real estate shall be sold until after the death of my said wife and my two sons.

"*Seventh.* I give and bequeath the equal one-third part of all the income, rents, issues and profits of all the rest, residue and remainder of my lands and real estate of what nature and kind soever and whatever the same may be at the time of my death to my wife, Walburga Haug, for and during the term of her natural life or so long as she shall remain my widow and not marry again in lieu of dower, the remaining equal two-thirds of the income, rents, issues and profits of my said lands and real estate I give and bequeath to my two sons, Frederick Ludwig Haug and Christian Charles Haug, to be divided among them equally, share and share alike.

"*Eighth.* Immediately upon the death of my said wife or her remarriage, whichever event shall first happen, I give and bequeath all the income, rents, issues and profits of my said lands and real estate to my sons Frederick Ludwig Haug and Christian Charles Haug to be divided among them equally, share and share alike.

"*Ninth.* Immediately after the death of my said wife and the death of my said two sons Frederick Ludwig Haug and Christian Charles Haug, I give, devise and bequeath all my said estate, real and personal, to all of my grandchildren, to be divided among them equally, share and share alike, *per capita*, not *per stirpes*.

"*Tenth.* I hereby authorize and empower my executors to rebuild any of the buildings now standing upon any of my lands and which may become destroyed or dilapidated by fire

or otherwise, and to use and employ any moneys or funds that may be in their hands belonging to my estate for the purpose of such rebuilding."

The Special Term reached the conclusion that the testator died intestate as to his personal estate remaining after the payment of his debts, expenses of administration and specific legacies; and that he intended to divide his real estate into three parts, one of which he had devised to his widow during life or until she should remarry, then to his two sons for life with remainder of Christian's half to the grandchildren of the testator living at Christian's death *per capita*, and with remainder of Frederick's half to the grandchildren of the testator living at Frederick's death *per capita*, and that the other two parts he had devised to his two sons, one part to each during life, with contingent remainders to the grandchildren, as above specified.

The Appellate Division reached a different conclusion. It held that the testator did not die intestate as to his personal estate remaining, but that he intended that its use and income should go to his widow and sons in the same proportion as provided for his real estate and that the grandchildren in being at the death of the testator took vested, instead of contingent, remainders in both the real and personal estate.

We find it difficult to sustain the conclusions reached by either of the courts below. It will be observed that the testator makes no provision for the disposition of his personal estate remaining until after the death of his widow and his two sons, and then he gives it with his real estate to his grandchildren. He creates no trust with reference to his real estate, but attempts to give the income from one-third to his widow during her life or until she shall remarry, and to give the income from the other two-thirds to his sons. He makes no division of the estate between them further than to specify the proportion of the income that each shall receive. He makes no distribution of his estate in case one son dies before the other, but evidently intended that the income of the whole should go to the survivor during life; for it is only

after the death of the widow and the two sons that he gives his estate to his grandchildren.

It is conceded that the sixth clause of the will is void as being in contravention of the statute which prohibits the suspension of the power of alienation beyond two lives in being. This provision, however, would not necessarily invalidate the other provisions of the will if they were separate and independent. There is, however, one idea which appears to have been paramount in the mind of the testator in disposing of his estate. This idea he has given expression to in the sixth clause of his will. He directed that none of his real estate should be sold until after the death of his wife and two sons. This declared purpose appears to have controlled him in framing the seventh, eighth and ninth clauses, for he concludes the ninth by withholding the giving of any of his estate to his grandchildren until after the death of his wife and his two sons, thus indicating that it was his intention that the survivor of his sons should have the whole income during his life. The court may construe wills and determine the evident intention of the testator, but it is not authorized to make a new will for him. It appears to us that the seventh, eighth and ninth clauses of the will are so connected with, and dependent upon, the declared intention as disclosed in the sixth clause, that they cannot be separated therefrom, and this disposition being prohibited by statute, these provisions must also be held to be illegal. It follows that the testator died intestate as to all of his property not disposed of by the first five clauses of his will.

The judgment of the Appellate Division and that of the Special Term should be modified accordingly, with costs to the parties appearing upon this appeal, payable out of the estate.

O'BRIEN, MARTIN and VANN, JJ., concur with BARTLETT, J., for affirmance; PARKER, Ch. J., and LANDON, J., concur with HAIGHT, J., dissenting.

Judgment accordingly.