the original amount must stand. I cannot find myself in consonance with either of these views.

In my judgment, under the facts revealed by this record, the declaring of these mere incidents to the conduct of this relator's business to be real estate—situated, as the learned referee reports them to have been, not upon property owned by it, but upon the lands of the individuals to whom it was supplying electricity—was a pure fiction, without support of any law that I have been able to find or apply. What is and what is not real estate may perhaps be a somewhat unsettled question, but, in my judgment, it is carrying theory too far to make the holdings of a citizen real estate while a municipality is predicating a tax upon it, and then, after that operation is complete, to have that which was declared tangible enough for that purpose in every other aspect utterly fail to stand any other test, and, as far as substantiality is concerned, vanish into thin air. In applying the doctrine of the two cases quoted above, I am of opinion that the learned referee failed to differentiate between the case where these wires, switches, and meters were upon the property owned by the relator, when it may well be this doctrine would have considerable force, and, on the other hand, where they are found (as in the case at bar) to have been installed upon properties not owned by relator, but by the citizens to whom they were supplying their product. Certainly such a doctrine cannot be applied in such a case. These effects must be clearly denominated personalty if the ownership is to be found in the relator. And being such, this case shows they have already been taxed for same. If they are to be called fixtures that are attached to the realty in such a way as to forbid their removal without damaging or working injury to the fee, and the intention was to make them fixtures, then, in all accepted law, they belong, not to this relator, but to the owner of the fee of the several properties upon which they have been placed. In either event this assessment cannot stand. It was a void and illegal assessment, and, being such, it did not require that objections to same should be filed, but is subject to attack at any time without the filing of preliminary objections. It therefore follows that so much of the report, findings, and conclusions of the referee as fixes the assessment of the relator as to its personalty at $364,508 should be confirmed, and that portion of same as establishes as valid the assessment of $80,000 on the cables, etc., as real estate, is not approved, but is set aside, and the said assessment as originally fixed by the respondents herein is vacated and set aside.

Ordered accordingly.

(99 App. Div. 112)

KENT v. KENT et al

(Supreme Court, Appellate Division, Third Department. November 16, 1904.)

1. WILLS—CONSTRUCTION—VESTED REMAINDERS—PERPETUITIES.

Testator, after providing for his widow, devised certain real estate absolutely to certain grandchildren, whose mother had died previously, and devised to each of his remaining children the use of certain other specifically described real estate, and in the tenth clause of his will provided that, when such children "are all dead," he bequeathed to his grandchildren, except those previously provided for, all the residue of his estate,

to be equally divided between them. It also appeared, from the provisions of the will as a whole, that testator had divided his estate into seven portions, so that the shares of all the grandchildren, taking by representation the property devised for life to their parents, would be of equal value. *Held*, that the real property, the life use of which was devised to testator's various children, vested in the grandchildren immediately on the death of the testator, with the right of possession immediately upon the death of any single life tenant, and hence the tenth clause, devising the remainder to the grandchildren, was not objectionable as creating a perpetuity.

Appeal from Special Term.

Action by James E. Kent against Amanda B. Kent and others for partition. Complaint dismissed. Plaintiff appeals. Affirmed.

The clauses of the will material to the decision are as follows:

Second. I give, devise and bequeath unto my son, Charles H. Kent, the use of my home farm, consisting of 345 acres of land. This includes 45 acres of the Beecher Farm, during his life time, provided he supports, provides and takes care of his mother, my wife, Amanda B. Kent, as long as she lives. And in case he does not support, maintain and care for the said Amanda B. Kent and make her last days comfortable, then in that case I give, devise and bequeath the use of the above named farm to my wife, the said Amanda B. Kent, during her life time.

Third. I give, devise and bequeath unto my grandchildren, Minnie Stow, Alida Cumming and Horton Stow, the following farm and lands: The Wilmot farm, consisting of about 112 acres of land; Baxter lot, consisting of about 20 acres; the Peet lot of about 50 acres, and the Ayres lot, consisting of about 80 acres of land, to be divided equally, share and share alike.

Fourth. I give, devise and bequeath unto my daughter, Jane Tiffany, the use of the farm known as the Martin P. Hupman farm, consisting of about 210 acres of land, during her life.

Fifth. I give, devise and bequeath unto my son, James E. Kent, the use of the farm now occupied by Charles H. Kent, consisting of about 114 acres of land, also the Smith lot, consisting of about 60 acres of land, during his life.

Sixth. I give, devise and bequeath unto my daughter, Mary Blatchley, the use of the farm now occupied by her, consisting of about 245 acres of land, during her life.

Seventh. I give, devise and bequeath unto my daughter, Nellie Frink, the use of the Enoch Smith farm, consisting of about 52 acres of land, also the Kuig lot, consisting of about 50 acres of land, and the Wooster farm, consisting of about 145 acres of land, during her life.

Eighth. I give, devise and bequeath unto my daughter, Alida Hewitt, the use of the Andrus farm, consisting of about 150 acres of land, during her life.

Ninth. If my personal property is not sufficient to pay all my indebtedness I hereby authorize my executors hereinafter named to sell the all of the balance of my real estate not heretofore mentioned, and if that is not sufficient I authorize said executors to sell as much timber from my home farm and the Andrus farm and the Enoch Smith farm as may be necessary to pay said indebtedness. Any surplus from the sale of said lands or timber I give and bequeath unto my wife, Amanda B. Kent.

Tenth. When my children, Charles H. Kent, James E. Kent, Jane Tiffany, Mary Blatchley, Alida Hewitt and Nellie Frink, are all dead I give, devise and bequeath unto my grandchildren, except Minnie Stow, Alida Cumming and Horton Stow, which are otherwise provided for in this Will, all the rest, residue and remainder of my estate, to be divided equally, share and share alike.

The following is the opinion of the court below (Lyon, J.):

The plaintiff bases his right to maintain an action in partition upon the alleged invalidity of the tenth clause of the will, as unlawfully suspending the

absolute power of alienation, and as unlawfully creating future estates which suspend the absolute power of alienation for a longer period than during the continuance of not more than two lives in being at the creation of the estates, and claims that the testator therefore died intestate as to all the lands, the life use of which was devised to his children. I am of the opinion that under the will the real property, the life use of which was devised to various children of the testator by clauses 2, 4, 5, 6, 7, and 8, vested in the grandchildren immediately upon the death of the testator. In the case of Haug v. Schumacher, 166 N. Y. 506, 60 N. E. 245, reported below, 50 App. Div. 562, 64 N. Y. Supp. 310, it was held that a clause of the will providing that "immediately after the death of my said wife and the death of my said two sons * * * I give, devise and bequeath all of my said estate, real and personal, to all of my grandchildren," vested absolutely in the testator's grandchildren who were living at the time of his decease valid future vested estates, and that no trust existed, and that the residuary estate vested immediately upon the death of the testator. In the case of Corse v. Chapman, 153 N. Y. 466, 47 N. E. 812, it was held that "it is a well-settled principle of construction that the law favors the vesting of estates, and that the words 'from and after,' or like expressions, as relating to the termination of the life estate, do not postpone the vesting of the estates in remainder until the death of the life tenant, but rather refer to the period when the remaindermen would become entitled to the estates in possession." In this case the language of the will was, "On the death of any child, then the said trust as to his or her said one-eighth share shall cease, and I then devise the said share to my grandchild or grandchildren." It was held that the word "then" is not an adverb relating to time, but means "in that event," and that the present vesting of the estates in remainder is clearly contemplated by the scheme of the will. So, in the case at bar, under the decisions it must be held that the statement in the tenth clause, "When my children * * * are all dead I give, devise and bequeath unto my grandchildren," contemplated the present vesting of the estate in remainder in the grandchildren, to open and let in future-born grandchildren.

Furthermore, as to the right of possession, the intention of the testator seems to have been that it should vest in the grandchildren as to the property, the life use of which was devised to the testator's living children, respectively, immediately upon the death of the single life tenant, and not be suspended until the death of all six of testator's children. The will itself creates but a single life tenancy as to the real property mentioned in clauses 2, 4, 5, 6, 7, and 8, and then devises all the rest, residue, and remainder of the estate to the grandchildren. Under the plaintiff's theory, the intention of the testator was that after the death of the life tenant the use and possession of the real estate affected by these six clauses of the will should pass to the heirs at law of the testator, whoever they might then happen to be, until the death of the remaining of testator's six children, when the use and possession should for the first time pass to the grandchildren other than the Stow grandchildren. Such a construction would leave the use and right of possession of a portion of this real property wholly undisposed of during five lives, notwithstanding the actual ownership had vested in the grandchildren immediately upon the death of the testator. Evidently the testator intended that his grandchildren should share equally in his estate. He divided it into seven portions of practically the same value. He had twenty grandchildren of living children, and three grandchildren of a deceased child, Alice Stow. The will provided that the twenty grandchildren should share in the parcels of real estate, the life use of which was devised by the clause above referred to, to the six living children, share and share alike, and that the three Stow children should share in the seventh share devised by the third clause of the will, share and share alike. Thus the shares of the twenty-three grandchildren were made practically equal, save that the Stow grandchildren became vested with their share of the property free from the life estate which their mother might have had if living. If, however, the contention of the plaintiff is correct as to the intention of the testator, the division between the grandchildren was most unequal, as, while the Stow grandchildren entered into immediate possession of their share of the testator's lands, the other grand-

children were compelled to await the death of all six children of the testator before any one of them could enter into possession of his share or her share of testator's property under the provisions of the will.

It is a very familiar rule that the intention of the testator must govern, if it can be discovered. If the intention of the testator, as apparent upon the whole will, taken together, was that the possession of the real estate devised in each of these six clauses should vest in the grandchildren upon the death of the particular life tenant, it is the duty of the court to subordinate the language to the intention, and to so construe the will as to effectuate the intention of the testator. As was said in the case of Lewis v. Howe, 174 N. Y. 340, 66 N. E. 975, 1101: "It is elementary law that the courts should adopt that construction, wherever possible, which will avoid intestacy, and which is most favorable to the vesting of the estate devised, and which will avoid the disinheritance of the remainderman who happens to die before the termination of the life estate. These rules are so familiar and so well settled that it is quite superfluous to cite authorities to support them." As was also said in Haug v. Schumacher, 166 N. Y. 506, 60 N. E. 245: "It is always the effort of the court to sustain, if possible, the will of a testator, and to give force and effect to the scheme that he has devised for the benefit of those depending upon him. A court is never swift to detect inaccuracies of expression, but rather inclined to read into the instrument such words as may give reasonable effect to its provisions." Where the intention of a testator is equally susceptible of two constructions, one of which will render the will valid, and the other invalid, it is the duty of the court to avoid that construction which will result in partial intestacy.

While much may be said in behalf of each construction of the will contended for, I am brought to the conclusion that under the will the grandchildren became vested immediately upon the death of the testator of the lands mentioned in the clauses of the will devising life estate to the children of the testator, and that the right of possession of the real property mentioned in each of the six clauses of the will referred to vested in the grandchildren of the testator, other than the Stow grandchildren, share and share alike, immediately upon the death of the single life tenant.

While the lands mentioned in the second clause of the will were conditionally charged with the support of the testator's widow, Amanda B. Kent, that interest has passed out by her death, and has therefore not been considered in this memorandum.

These views lead to the dismissal of the complaint upon the merits.

As all the parties to the action are interested in obtaining an adjudication as to the validity of the tenth clause of the will, costs should not be awarded against any of the parties.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Curtiss, Arms & Keenan, for plaintiff and defendant executors.

Carver, Deyo & Hitchcock, for defendants Mary Blatchley and another.

Roberts, Tuthill & Rogers, for guardian ad litem.

A. W. Cumming, for defendant Cumming.

PER CURIAM. Judgment affirmed, upon the opinion of Lyon, J., at Special Term, with one bill of costs and disbursements of all respondents against appellant.