(70 Misc. Rep. 279.)

In re BENSEL et al., Board of Water Supply.

(Supreme Court, Special Term, Ulster County. June, 1910.)

1. PERPETUITIES (§ 6*)—SUSPENSION OF POWER OF ALIENATION.
A clause in a will gave to the testator's daughter her house and lot "for her use and living as long as she lived, she not to sell or transfer to any person and I hereby prohibit her to sell it for I intend it for her and her daughters," and a second clause gave the house and lot, after the death of her daughter, to her two granddaughters "upon the same condition of their mother for their use and living, to share alike and they are not to sell or transfer it and it to be used by them for a home and it to revert to their heirs after their death." *Held*, that the daughter took a life estate, and after her death the granddaughters took a life estate in the house and lot, and the power of alienation was not suspended for more than two lives in being at the death of the testatrix.
[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 45–56; Dec. Dig. § 6.*]

2. WILLS (§ 439*)—CONSTRUCTION—INTENTION OF TESTATOR.
The courts will strive to carry out the plain intent of a testator where the same is ascertainable and does not conflict with any rule of construction or with any existing statute.
[Ed. Note.—For other cases, see Wills, Cent. Dig. § 952; Dec. Dig. § 439.*]

3. EMINENT DOMAIN (§ 237*)—AWARD—CONFIRMATION—CONCLUSIVENESS.
Where the right to an award in condemnation proceedings depends upon the construction of a will, the report of commissioners and order of court confirming same are not binding on infant heirs who were not parties to the condemnation proceedings.
[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 604–613; Dec. Dig. § 237.*]

In the matter of the application of John A. Bensel and others, constituting the Board of Water Supply of the City of New York, to acquire real estate for the City of New York, under chapter 724 of the Laws of 1905 and the acts amendatory thereof in the towns of Olive, Marbletown, and Hurley, Ulster County, New York, for the purpose of providing an additional supply of water for the city of New York. On a motion by Ida Simpson and others for the payment to them by the Farmers' Loan & Trust Company of the amount of a certain award and interest thereon. Motion denied.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

William D. Brinnier, for the motion.

Geller, Rolston & Horan, opposed.

Archibald R. Watson, Corp. Counsel, and William McMurtrie Speer, Special Counsel, for City of New York.

BETTS, J. This is a motion made by Ida Simpson, Isabella Laverty, and Nellie Fletcher for the payment to them by the Farmers' Loan & Trust Company of the amount of a certain award and interest thereon for said parcel No. 537. This parcel formerly belonged to one Delia Eckert, and was devised by her by her last will and testament bearing date August 29, 1904, and admitted to probate in the Surrogate's Court of Ulster county March 20, 1905. The moving parties claim to have been the owners of parcel No. 537 at the time it was taken by the city of New York as devisees under said will, and now to be the owners of the award made therefor by commissioners of appraisal duly appointed for that purpose. It seems from the papers here submitted that the commissioners reported them to be the owners, but that the court in making the order confirming the report of the commissioners provided as follows:

"Ida Simpson is the owner of a life estate in said real estate; after her death the same passes to Isabella Laverty and Nellie Fletcher under the will of Delia Eckert, admitted to probate by the surrogate of Ulster county March 20, 1905, and recorded in his office in book No. 6 of Wills at page 481, which will provides that said Isabella Laverty and Nellie Fletcher are not to sell or transfer said real estate, but it is to be used by them for a home and to revert to their heirs upon their death."

The decree or order of confirmation further directed as follows:

"The city of New York is hereby directed to pay said sum of three thousand six hundred and seventy dollars ($3,670) into court by paying the same to the Farmers' Loan & Trust Company of the city of New York, the said Ida Simpson to receive the income thereof for and during her life, and after her death the said income to be received by said Isabella Laverty and Nellie Fletcher share and share alike and upon their deaths the said principal sum to be paid to their heirs."

The Farmers' Loan & Trust Company objects to the granting of the order and asks that it should be denied.

It appears that the applicants for the payment of this award did not know of the provision of the decree until after payment was made to the Farmers' Loan & Trust Company.

The will of Delia Eckert, so far as material here, provides as follows:

"Second: I give unto my daughter Ida Simpson my house and lot at Shokan, that I purchased of Charles E. Krom for her use and living as long as she lives, she not to sell or transfer it to any person and I hereby prohibit her to sell it for I intend it for her and her daughters.

"Second: After the death of my daughter Ida, I give and bequeath the same unto my grand-daughters Isabel and Nellie upon the same condition of their mother for their use and living, the said Isabel Laverty, wife of Wm. Laverty and Nellie Simpson, each to share alike and they are not to sell or transfer it and it to be used by them for a home and it to revert to their heirs after their death, and it is my will that William Laverty have charge

of the same. * * * Lastly I hereby appoint William T. Layerty sole executor of this, my last Will and Testament hereby revoking all former wills by me made."

The construction of this will is involved in the decision of this motion. It is clear enough that the testatrix, Delia Eckert, gave to her daughter, Ida, a life estate only, and she was directly prohibited from selling or transferring said real estate to any person. In the following clause I think that the testatrix gave to her granddaughters Isabella and Nellie (now married women) each a life estate in an undivided one-half interest in said premises as tenants in common, and that upon the death of Ida Simpson and Isabella Laverty one-half of this property would belong absolutely to Isabella Laverty's heirs by the terms of this will, and that upon the death of Ida Simpson and Nellie Fletcher the other undivided one-half of the premises would belong to Nellie Fletcher's heirs. It seems to be the clear intent of the maker of this will to prevent the premises devised being disposed of during the lifetime of her daughter Ida and her granddaughters Isabella and Nellie, and I think she has achieved her purpose. The courts will strive to carry out the plain intent of a testator where the same is ascertainable and does not conflict with any rule of construction or with any existing statute. I do not think that there is an illegal suspension of the power of alienation here. I think that the right to convey these premises was not suspended by this will for more than two lives in being at the time of the death of the testatrix, and that a valid remainder was created for the respective heirs of these granddaughters, if any, in existence at the time of the death of the testatrix, subject to open and let in such other heirs, if any, as might be born prior to the termination of the two life estates.

A much similar case is Ward v. Ward, 23 N. Y. Wkly. Dig. 466, a General Term decision, where a testator's will provided as follows:

"I give and bequeath to my wife the use and income of all my real and personal estate during her natural life. * * * And upon my wife's decease the use and income of all my estate, * * * to my two sons, share and share alike, and upon the decease of my sons I give, devise and bequeath to their heirs their fathers' portion"—

in which the court held:

"That the provisions of the will as to the disposition of the estate after the death of testator's wife did not unlawfully suspend the power of alienation"—citing 80 N. Y. 320, 88 N. Y. 323.

See, also, Haug v. Schumacher, 50 App. Div. 562, 64 N. Y. Supp. 310, affirmed 166 N. Y. 506, 60 N. E. 245.

In Trolan v. Rogers, 79 Hun, 507, 29 N. Y.Supp. 899, the will provided as follows:

"I also hereby give, bequeath and devise the use and enjoyment of the rest, residue and remainder of my real estate * * * to my * * * wife Hannah * * * during her natural life, and after her decease to go and to be divided equally between my son Julius and my daughter Julia * * * during their and each of their natural lives, and after their decease to their children and heirs at law in fee simple."

And the court says:

"We think there was no unlawful suspension of the title to the real estate."

See, also, Purdy v. Hayt, 92 N. Y. 446, in which it is held:

"It is no objection to the validity of a remainder in fee that it is limited in favor of persons not in being when the limitation is created, or not ascertainable until the termination of a precedent estate, provided only that the contingency upon which the remainder depends must happen within, or not beyond the termination of the prescribed period for the vesting of estates"—

and an interest devised in much similar terms to the interest devised to the heirs of the granddaughters here is sustained by the court.

In Monarque v. Monarque, 80 N. Y. 320, by the first clause of the testator's will he gave to his wife the use of all his real and personal estate during her life. The second clause is as follows:

"I give and bequeath the income arising from my estate to my daughters, Ellen Requa, Louisa Dixon, Eliza and Mary, to be divided between them, share and share alike, during their and each of their respective natural life, and remainder to their respective children and to their respective heirs and assigns forever."

The court says:

"There was no illegal suspension of the power of alienation of the property devised. The manifest design of the testator by the first and second clauses of the will was to give successive life estates in the property, first to his wife, and then to his daughters, remainder in fee to their children, and this is the construction of the language used. The gift of the income, by the second clause, to his daughters for life, was equivalent to a devise to them of a life estate in the land. * * * But the devise to the daughters for life, although embraced in a single clause in which all are named, is by the well-settled construction of similar clauses a devise to each in severalty of a life estate in one-fourth part of the property. * * * The consequence is that on the termination of the life estate of the widow, and the death of any daughter of the testator leaving children, the remainder in fee, as to the one-fourth part, would immediately vest in possession in such children. The absolute ownership or power of alienation of the estate is not, therefore, suspended beyond the period of two lives in being at the death of the testator. * * * The remainder given by the second clause vested upon the death of the testator, in the children of the testator's daughters living at that time, subject, however, to open and let in afterborn children, who might come into existence during the life of the mother."

See, also, somewhat similar will in Wells v. Wells, 88 N. Y. 323, in which it was held "that the utmost suspension of the ownership of any part of the estate was during the lives of the widow and of one child, and that there was therefore no unlawful suspension of the power of alienation."

The ownership of this award in my opinion depends upon the construction of the will of Delia Eckert, and not upon the report of the commissioners or the order of confirmation by the court. Manifestly neither the commission nor the court could give to claimants any greater rights than they obtained by the will nor could they take from them or from any other person any rights secured by that will.

An interesting question arises here, if the construction here given to Delia Eckert's will is correct, as to just what rights the city of New York obtained by the report of these commissioners or the order of confirmation. These infant heirs, if any, would not be concluded by any action taken in a proceeding in which they were not represented. The provisions of the order of confirmation would look like a mani-

fest effort to correct in said order the errors or omissions at the trial. However, these questions are not now pressing for solution.

It follows, therefore, if my reasoning is correct. that neither the daughter nor the two granddaughters of Delia Eckert could have given a good title to these premises prior to the taking thereof by the city of New York. If so, there is no authority in the court to give the possession of this award or fund growing out of the taking of the said property to them, hence the motion must be and is denied, but without costs against the claimants, and without prejudice to any other or different motion that they may desire to make.

Ordered accordingly.