Fuld, J.
The question posed by this appeal involves the doctrine of ademption. Is a specific legacy adeemed if, although the item bequeathed is missing at the time of the testator’s *367 death, its value has been paid to the estate by an insurance carrier?
Claire Wright died in May of 1956. By her will, executed the year before, she bequeathed all her “furs and jewelry, both costume and precious ”, to Helen Erskine. The testatrix had in 1954 taken out a policy insuring her against the loss of jewelry and furs and in a schedule attached to the policy 27 items were listed, including a diamond ring valued at $4,920 and a gold fountain pen, valued at $75. About a month after the testatrix’ death, her executors, following a search of her effects, concluded that the ring and pen were ‘ ‘ missing ’ ’ and some time later filed a proof of loss for those articles. The insurance carrier, accepting the claim, paid the executors $4,920 on account of the ring.[1]
In their account of proceedings, the executors requested instructions as to the disposition to be made of the insurance proceeds. Objections to the accounting were raised by both Helen Erskine and the testatrix’ mother, Mary Robinson, one of the residuary legatees. The former claimed, in effect, that the insurance proceeds should be treated as a “ specific legacy ’ ’ and paid to her, while Mrs. Robinson urged that the bequest of the ring had been adeemed and that the insurance moneys constitute part of the residuary estate.
The Surrogate’s Court sustained Helen Erskine’s objection; reasoning that she was “ vested with ownership ” of the missing ring, the Surrogate decided that the insurance proceeds belonged to her. Upon an appeal taken by Mrs. Robinson, the Appellate Division took a different view, holding that the specific bequest failed and that the insurance moneys became part of the residuary estate.
As indicated above, we deal with the problem of ademption. Although, in the early days of our law, ademption was based on the intention of the testator, today in New York, as well as in many other jurisdictions, intention has nothing to do with the matter; the bequest fails and the legatee takes nothing if the article specifically bequeathed has been given away, lost or destroyed during the testator’s lifetime. (See Matter of Brann, *368 219 N. Y. 263, 267-268; Matter of Ireland, 257 N. Y. 155, 158; Matter of Johnston, 277 App. Div. 239, 241, affd. 302 N. Y. 782; Beck v. McGillis, 9 Barb. 35, 56, 58-59; Stanley v. Potter, 2 Cox Ch. 180, 183; Durrant v. Friend, 5 DeG. & Sm. 343; Lenzen v. Miller, 309 Ill. App. 617, 628; Hoke v. Herman, 21 Pa. 301, 305; Forster v. Kamba’s Estate, 230 Wis. 246, 251; see, also, Atkinson, Wills [2d ed., 1953], pp. 741-742; 4 Page, Law of Wills [3d ed., 1941], § 1515 et seq.-, 6 Powell, The Law of Beal Property [1958], p. 548 et seq.) ■
Thus, wrote the court in Matter of Brann (219 N. Y. 263, 268, supra), “ It was once thought that ademption was dependent on intention, and ‘ it was, therefore, held in old- days that when a change was effected by public authority, or without the will of the testator, ademption did not follow. But for many years, that has ceased to be law ’ [case cited] * * * What courts look to now is the fact of change. That ascertained, they do not trouble themselves about the reason for the change.” The thing given is gone, and a court is not privileged to substitute something else for it. How unimportant the element of intention is, may be gleaned from Matter of Ireland (257 N. Y. 155, supra), where certain stock specifically bequeathed was held to have been adeemed, even though the stock had been sold by the testator’s committee after he had become incompetent. This court, after noting that the Appellate Division had declared that ‘ ‘ the intention of the testator was the governing factor in the case, and that as he had become incompetent to change or modify his will, his committee had no power to dispose of his property * * * so as to work an ademption of the legacy ”, went on to say (p. 158): “ The rule as it existed at common law, and still exists, admits of no such exception. * * * The exact thing which was given by the will could not physically be passed on to the legatee. From the very nature of the case and of the gift the legacy became extinct. In the absence of statute there is no power in the courts to change a specific into a general legacy or turn over the balance of the proceeds derived from the sale of the specific property to the legatee in place of the particular thing intended to be given.”
What is significant, therefore, is the fact that the precise thing given by the will is not available for disposition at the time of the testator’s death, and it matters not whether this came to *369 pass because of an intentional and voluntary act on the part of the testator, such as abandonment, sale or gift, or because of an occurrence, involuntary and unintended, such as condemnation, fire or theft. (See Ametrano v. Downs, 170 N. Y. 388; Matter of Hilpert, 165 Misc. 430; Matter of Barry, 208 Okla. 8; see, also, 2 Jarman, Wills [8th ed.], p. 1065; Hnston, Succession, 34 N. Y. U. L. Rev. 1520,1525-1526; Note, 38 Cornell L. Q. 630.)
Indeed, there are at least two cases in which almost the precise question here involved was considered and passed upon. (See Matter of Hilpert, 165 Misc. 430, supra; Matter of Barry, 208 Okla. 8, supra.) In the Hilpert case, the testator specifically bequeathed a ‘ ‘ library ’ ’ which he had insured against loss by fire. A fire occurred, destroying some of the books and damaging others. The testator having apparently died shortly after the fire, his executor settled the loss with the insurance carrier and then sought approval of the compromise and a construction of the will. The Surrogate’s Court (Wingate, S.) approved the compromise and, in holding that the destruction of the books worked an ademption and that the legatee was not entitled to any part of the insurance proceeds, wrote, very much to the point (165 Mise., at pp. 432-433): “ The will speaks from the date of death * # * with the result that, if an article specifically given is not in existence at the time, by reason of loss, disposal or destruction, the legatee will take nothing. [Cases cited.] * * * In so far, therefore, as the specifically given articles were destroyed by fire there was an ademption of the gifts. Those which were not destroyed, but merely damaged, are deliverable in the state in which they presently exist. The insurance policy was a totally different asset of the decedent * * '* [and] like any other chose in action belonging to him, passed to his personal representative ”. Matter of Barry (208 Okla. 8, supra), dealing with a specific bequest of an automobile, is even more pertinent. The automobile was demolished and the testatrix killed in a highway accident which occurred while she was driving. The auto was insured, and the question arose whether the legatee was entitled only to the car in its damaged condition or to the car in its damaged condition plus the insurance proceeds. The high court of Oklahoma, adopting the reasoning of the Hilpert case, held that the specific legatee took the automobile in its damaged state and nothing more.
*370 As to the further contention advanced by the appellant that the ring was actually a part of the testatrix’ estate at the time of her death, it is necessary merely to observe, first, that the burden of proving that is on the person making the claim (see, e.g., Matter of Mercer, 171 L. T. R. 254, 255; Durrant v. Friend, 5 DeG. & Sm. 343, supra; Matter of Horn, 317 Pa. 49) and, second, that the appellant failed to meet that burden in this case. In point of fact, not only is there not a word of testimony in the record before us that the ring was held by the testatrix or was among her effects when she died, but there is ample basis for concluding, as the Surrogate himself assumed, that the ring was either lost or stolen prior to her death. Payment of the loss by the insurance company establishes nothing more than that the carrier was satisfied that the policy covered the ring and that that article was missing.
The order appealed from should be affirmed, with costs to all parties appearing separately and filing separate briefs, payable out of the estate.
Chief Judge Desmond and Judges Dye, Feoessel, Van Voobhis, Bubke and Fosteb concur.
Order affirmed.

. The insurance company also paid $75 on account of the pen, but we are not here concerned with that article.