OPINION OF THE COURT
Edward M. Horey, S.
In this construction proceeding, initiated by the executor of decedent’s will, the first question presented relates to the disposition of the decedent’s real property.
The evidence is that at the time she drew her will in 1957, the decedent owned a house and lot at 31 Maple Street, Salamanca, New York.
Under paragraph "third” of her will, she devised to Lee Foey Harris, "my house and lot at 31 Maple Street, Salamanca, New York, during the term of his natural life, and at his death, I give, devise the same to his children, share and share alike.”
In 1971, decedent’s house at 31 Maple Street, Salamanca, New York, was taken in condemnation proceedings by the Salamanca Urban Renewal Agency. Title in fee vested in that agency by an order of the Cattaraugus County Court, dated January 28, 1972.
Less than one month later and on February 16, 1972, decedent purchased a house and lot at 79 Maple Street, Salamanca, New York. She died owning this real property and no other.
Quaere: Does the substituted real property at 79 Maple Street pass under the devise of the premises of 31 Maple Street? The question raised is not merely that of ademption, but more accurately that of involuntary ademption and particularly here, by dint of condemnation proceedings.
*744 Clearly the devise under paragraph "third” of decedent’s will was a specific one. As a devise of "a specified or identified item” it meets fully the test by definition of a specific disposition provided in EPTL 1-2.16, to wit: "A specific disposition is a disposition of a specified or identified item of the testator’s property.”
As this court has noted in earlier decisions, at one time the resolution of problems of ademption in this State was by determining the subjective intent of the decedent. As a general rule this is no longer true. By the decisional law of the Court of Appeals, New York courts now proceed on "the 'identity’ theory in contradistinction to the 'intent’ theory.” (9 Rohan, NY Civ Prac, par 3-4.5 [1], p 3-222.2, and cases cited.) " 'What the courts look to now is the fact of change. That ascertained, they do not trouble themselves about the reason for change.’ ” (Matter of Wright, 7 NY2d 365, 368; Matter of Brann, 219 NY 263, 268; Matter of Ireland, 257 NY 155, 158, and most recently Matter of Block, 91 Misc 2d 92, 94.)
It may be said that the only exception to the rigor of the present rule on ademption concerns the substantiality of the change effected in the property bequeathed or devised. (9 Rohan, NY Civ Prac, par 3-4.5 [1], p 3-223; Matter of Block, 91 Misc 2d 92, supra.) An insubstantial change in property has been held to have no effect on a legacy or a devise. There is no ademption if the change is limited to one in name or form only. (Matter of Brann, 219 NY 263, supra.) However, the changes which the courts will consider to be those in name and form and thus insubstantial are extremely limited. They are confined principally to situations where there has been a substitution of securities as a consequence of a corporate merger or reorganization. (9 Rohan, NY Civ Prac, par 3-4.5 [1], and cases cited; see, also, Matter of Block, 91 Misc 2d 92, reviewing prior determinations.)
The attorney for the petitioner has urged that the conversion of the decedent’s real estate, in the case at bar, should be excepted from the general rule because the ademption was by dint of condemnation proceedings and thus involuntary. Because the court was and is of the opinion that equitable considerations attend this argument, the court has sought to find decisional support for it. The search has been in vain. All discovered authority is against the petitioned exception.
An older case, but one in point is Ametrano v Downs (170 NY 388). There, as in the case at bar, real estate specifically *745 devised under a will had been taken in condemnation proceedings. After reviewing the general principles which would have concluded that an ademption had occurred, the Court of Appeals said (p 392): "the only point to be considered therefore, is whether a different rule obtains in the case of involuntary alienation, by operation of law, from that which prevails on a voluntary sale.” The answer of the court was no! It was held that the devisee of the real property did not take the proceeds resulting from the condemnation of it.
More recently, in Matter of Wright (7 NY2d 365, supra) our Court of Appeals held that a legatee of a specific bequest of a diamond ring under a testatrix’ will was not entitled to the insurance proceeds paid under a theft policy and applicable because the ring had been stolen shortly before the testatrix’ death. In affirming, the appellate determination, the Court of Appeals made the following relevant statement (pp 368-369): "What is significant, therefore, is the fact that the precise thing 'given by the will is not available for disposition at the time of the testator’s death, and it matters not whether this came to pass because of an intentional and voluntary act on the part of the testator, such as abandonment, sale or gift, or because of an occurrence, involuntary and unintended, such as condemnation, fire or theft.” (Italics added.)
The argument of "substituted premises” has been noted. Under it, the contention is made that the premises owned by the decedent at the time of death should be substituted for those owned at the execution of the will, having been purchased from the proceeds of condemnation of the earlier owned property. Examination discloses that the argument must be rejected. The specificity of description in the will, viz.: "my house and lot at 31 Maple Street, Salamanca, New York”, forecloses relief. The premises owned at death are not those described in the will. Had the description in the will been broader, e.g. — "my house in Salamanca” redress might be had. The view taken is supported by the decision in Matter of Charles (3 AD2d 119). There, the owner of a lot with a house located thereon was taken in condemnation. Later, the owner purchased the house and moved it to a new location in the same village. It was held that because the description in the will was couched in the general terms of "my house in Wading River, Long Island”, the repurchased house moved to a new location, met the requirements of the description and passed to the devisee named.
*746 In reaching its decision, the court pointedly noted and cited the "Grosvenor Square” illustration which appeared in Jar-man’s celebrated text on wills. That illustration follows: " 'Suppose a testator has a house in Grosvenor Square, and he says in his will, "I give my house in Grosvenor Square;” then suppose he sells the house he had at the date of his will, and buys another in Grosvenor Square; my opinion is (and I have not a doubt about it), that under the general description, "my house in Grosvenor Square, ” the house would pass. The Legislature says I must read the will as if it were made immediately before the death of the testator. Doing that, I find he has a house in Grosvenor Square, and that must necessary pass. But if he adds a description showing that he meant a particular thing only — if, for instance, he says, "I give my house No. 2 Grosvenor Square,” and if he afterwards sells that house, and buys No. 6, I am equally clear that No. 6 would not pass, because a contrary intention is expressed. He has sold the house No. 2, and has no longer got it, and the devise is adeemed by the sale of that house, and you cannot apply the general description of "my house” where he has specifically described the house by name.’ ” (Matter of Charles, 3 AD2d 119, 124, supra, citing the English case of Castle v Fox, LR 11 Eq 542 [1871], which quoted and applied the cited illustration.)
With no residuary clause and with no known distributees to take in intestacy, in the case at bar, a determination of ademption will mean that the decedent’s real property will escheat to the State of New York to the loss of the named devisees. This court has no doubt at all that this was never, never the intention of the testatrix.
In reaching its decision, this court is cautioned by the observation of Justice Wenzel who wisely observed: "It is easy to go astray as to the proper application of the principles of ademption when a sense of justice is disturbed or when one strives to carry out the intention of the testatrix. * * * [However] ademption is a conclusion of law which prevails without regard to the intention of the testator, the hardship of the case, or the injustice of the result” (Matter of Charles, 3 AD2d 119, 122, supra).
Some relief to the harshness of the rule of involuntary ademption has been made by the Legislature. To overturn the harsh rule applied in Matter of Wright (7 NY2d 365, supra), the Legislature enacted EPTL 3-4.5. It provides: "Where insurance proceeds from property which was the subject of a *747 specific disposition are paid after the testator’s death, such proceeds, to the extent received by the personal representative, are payable by him to the beneficiary of such disposition”. However, the statutory relief is limited solely to insurance proceeds from specific dispositions. Perhaps it should be extended.
Except for the ingenuity of an appellate court, not bound by prior determinations, to. grant relief by making new decisional law, it would appear that only legislative action can provide needed redress. This court has exhausted every avenue it could think of without success.
Reluctantly, it holds the real property described in the decedent’s will has adeemed. The realty, which was owned at death, passes under the laws of intestacy with subsequent escheat to the State of New York, if no distributees are ever found.
The second question presented herein relates to the meaning of the words "personal belongings” in the lexicon of the testatrix.
In paragraph "second” of her will, she bequeathed to Doris May Harris, "my two diamond rings, and also all furniture, household goods and personal belongings in the house where I reside”. (Italics added.)
For determination is the question of whether or not any or all of the following property, to wit: (1) a Prudential life insurance policy in the amount of $500 payable under its terms to the estate of the decedent by virtue of the prior death of decedent’s husband as named beneficiary and (2) the proceeds of a savings bank account in the Salamanca Trust Co. in the sum of $7,115.28 evidenced by a passbook for Account No. 609-51067-3 in the name of the decedent and found in her residence, and (3) the proceeds of a checking account in the Salamanca Trust Co. in the sum of $4,367.64 evidenced by a passbook for Account No. 609-12648-2 in the name of the decedent and found in her residence, pass to the legatee named in paragraph "second” as "personal belongings”. In the event they do not, they will pass as property escheating to the State of New York. This consequence stems from the fact that the decedent did not include any residuary clause in the will in issue and the further fact that decedent left no distributees to take in intestacy.
Rather than taking recourse in dictionaries and prior definitions, it is the judgment of the court that the proper way to *748 approach and resolve the matter in issue is to acknowledge, realistically at the outset, that the meaning of "personal belongings” will vary with the setting in which the term appears. This was a view taken by Lord Mansfield in an early English case of Hogan v Jackson (1 Cowper 299, 304). There he said of an analogous bequest of "effects”: "It is nugatory to cite cases, unless you fix the meaning of the term to which they are to be applied”. Similarly, in Matter of Michaelson (194 Misc 525), Surrogate Collins said that the words " 'personal effects’ are not words of art and have no fixed or settled meaning”, and in Matter of Maurer (192 Misc 627, 628) Surrogate Delehanty said of "personal effects” that it was a term, the interpretation of which "varies with the setting in which it appears.”
The will itself gives some perspective to the setting attending this decedent’s testamentary dispositions. It is noteworthy that the bequest of decedent’s "personal belongings” follows immediately after a bequest in the same paragraph of two diamond rings, all furniture and household goods. There follows, by a separate paragraph, a devise of the decedent’s interest in the real property.
The court regards it of prime importance that the decedent limited all dispositions which she made under her will to two disposing paragraphs.
By such limitation, the court believes it clear that the testatrix intended to dispose of all her worldly goods with one paragraph (paragraph "second”) dispositive of her personalty, and the other (paragraph "third”) dispositive of her realty.
The court finds it equally clear that in listing items of personalty in paragraph "second” the decedent did not intend any fixed classes of objects, but was intending to list indiscriminately and generally, by overlapping concepts all of her personal property.
At first blush, the inclusion of bank accounts and insurance policies under the term "personal belongings” seems strained. Yet it has been held that "[t]he term ’personal belongings’ itself is an extremely broad elassiñeation and might, if not restricted, include most of a testator’s personal property.” (Matter of Pedersen, 197 Misc 660, 662; italics added.)
The only arguable restriction found in the decedent’s will was the phrase "in the house”. However, that phrase qualifies the bequest of "furniture” and "household goods” as well as "personal belongings”. Further, it is the fact that the pass *749 books evidencing the bank accounts and the insurance policy were located in decedent’s house. One could argue forever, without absolute certainty ever achieved, how the decedent viewed the presence of the passbooks and insurance policy. It is at least permissible to conclude that she equated their presence with the presence of what they represented.
Further insight into decedent’s - intent is, reflected in the beneficiaries named in her will. A reading discloses that her testamentary scheme and "dominant purpose” was to benefit Doris Mae Harris and her husband, Lee Foey Harris. To. delimit the bequest of the decedent’s personalty to exclude the bank accounts and insurance proceeds would violate the established rule that a will should be construed to benefit those persons, who by the terms of the will, are shown to be the foremost objects of her bounty. (Matter of Fabri, 2 NY2d 236, 240, 242; Matter of Dammann, 12 NY2d 500, 505.)
There is also a general maxim of construction that the law favors testacy over intestacy. (Haug v Schumacher, 166 NY 506, 515; Matter of Strasenburgh, 136 Misc 91, affd without opn 228 App Div 880, affd without opn 255 NY 549; 27 Carmody-Wait 2d, § 162:27, and cases cited.) This maxim has particular application where a legatee is to get something or nothing. In such instance, the presumption is that a testator intended a legatee to receive something in any event. (Matter of Strasenburgh, 136 Misc 91, 93, supra.) Here, if the proceeds of the bank accounts and insurance policy are removed from paragraph "second”, the legatee will receive nothing of practical value, the furniture and household goods being old, worn and few in number.
The evidence produced indicates that the property of the decedent of any meaningful value was her real property and her bank accounts. Together, they represented the bulk of her worldly goods. The named beneficiary of the realty, Lee Foey Harris, was the nephew of the decedent’s deceased husband. The beneficiary of the personalty was that nephew’s wife, Doris Mae Harris. Neither beneficiary is a distributee of this decedent, yet the beneficiaries for years made théir home with the decedent and her late husband. The decedent referred to them as her "nephew” and her "niece” in her lifetime and in her will. The remaindermen of the attempted devise of decedent’s real property were the children of these two beneficiaries.
Certain it is that the decedent knew better than anyone else *750 the status of her family. She had no relatives by blood that she might be charged with having to consider as possible beneficiaries in the event she died intestate. There are no known distributees.
In contrast to the disposition of the real property which the court has held falls under separate rules of law concerning ademption, the ultimate test for the disposition of decedent’s personalty in this proceeding is "to ascertain and give effect to the intention of the testator”. (27 Carmody-Wait 2d, § 162.2, p 136, and cases cited; 7 Warren’s Heaton, Surrogates’ Courts, § 16, par 1, and cases cited.)
When all is said, the alternative to the conclusion that the decedent intended as the beneficiary of her personalty the woman that she lived with for years, the person for whom she made a home with a husband and children, a relative of her deceased husband, an intimate referred to as a niece and the nominee under her will, is the conclusion that the decedent intended as the recipient of her modest munificence, the State of New York. This court does not think so. Conceding very frankly, difficulties with construction and the application of opposing maxims, the court, nonetheless, determines that the proceeds of the bank accounts and insurance policy of the decedent passed under paragraph "second” to the named beneficiary, Mrs. Doris Mae Harris. Commonsense logic and every equity support this result.
A decree is to be submitted on the decision reached.