[852 NE2d 138, 819 NYS2d 215]

In the Matter of the Estate of GEORGE J. FERRARA, Deceased.
SALVATION ARMY, Appellant; DOMINICK FERRARA et al.,
Respondents.

Argued June 1, 2006; decided June 29, 2006

## POINTS OF COUNSEL

*Cadwalader, Wickersham & Taft LLP,* New York City (*Edwin David Robertson* and *Kathyrn F. Shreeves* of counsel), for appellant. I. An agent acting under a short form power of attorney bears the burden of proof that the agent's self-dealing was free from fraud and undue influence. (*Mantella v Mantella,* 268 AD2d 852; *Matter of Naumoff,* 301 AD2d 802, 100 NY2d 534; *Semmler v Naples,* 166 AD2d 751, 77 NY2d 936; *Matter of Roth,* 283 AD2d 504; *Matter of De Belardino,* 77 Misc 2d 253, 47 AD2d 589; *Matter of Iannone,* 104 Misc 2d 5; *Matter of Gordon v Bialystoker Ctr. & Bikur Cholim,* 45 NY2d 692; *Ten Eyck v Whitbeck,* 156 NY 341; *Cowee v Cornell,* 75 NY 91; *Sepulveda v Aviles,* 308 AD2d 1.) II. The 1996 amendments to the General Obligations Law did not overturn long-established New York precedent placing the burden of proof on the agent. (*Matter of Clinton,* 1 Misc 3d 913[A], 2004 NY Slip Op 50056[U]; *Matter of Gershenoff,* 2 Misc 3d 847, 17 AD3d 243; *Mantella v Mantella,* 268 AD2d 852.) III. An agent who makes gifts to himself is not relieved from the duty to act in the best interest of the principal. (*Matter of Breen v New York Fire Dept. Pension Fund,* 299 NY 8; *Matter of Delmar Box Co. [Aetna Ins. Co.],* 309 NY 60; *Matter of Gordon v Bialystoker Ctr. & Bikur Cholim,* 45 NY2d 692; *Cowee v Cornell,* 75 NY 91; *Ten Eyck v Whitbeck,* 156 NY 341; *Matter of Clinton,* 1 Misc 3d 913[A], 2004 NY Slip Op 50056[U]; *Matter of Gershenoff,* 2 Misc 3d 847; *Mantella v Mantella,* 268 AD2d 852.)

*Bashian & Farber, LLP,* White Plains (*Annette G. Hasapidis* and *Gary E. Bashian* of counsel), for respondents. I. Even if a "best interest" of the principal standard applies to the supplemental powers provision of the General Obligations Law, respondents acted in decedent's best interests when they carried out his express wishes to "make gifts to themselves without limitation." (*Lamdin v Broadway Surface Adv. Corp.,* 272 NY 133; *Cymbol v Cymbol,* 122 AD2d 771; *Zaubler v Picone,* 100 AD2d 620; *Bradford Co. v Dunn,* 250 NY 461; *Mercury Bay Boating Club v San Diego Yacht Club,* 76 NY2d 256; *Matter of Manning v Glens Falls Natl. Bank & Trust Co.,* 265 AD2d 743.) II. The plain language of the supplemental powers provision of the General Obligations Law, read in pari materia with the

other provisions of that statute, permits a principal to authorize his agent to make gifts to himself. (*People v Owusu,* 93 NY2d 398; *We're Assoc. Co. v Cohen, Stracher & Bloom,* 65 NY2d 148.) III. An agent acting under a statutory short form power of attorney need only prove that the power of attorney was valid. He is not required to prove that the power of attorney was not the product of undue influence in the absence of a confidential relationship. Further, appellant presented no evidence to justify a review of the circumstances preceding the creation of this agency relationship under a clear and convincing evidence standard. (*Semmler v Naples,* 166 AD2d 751; *Matter of De Belardino,* 77 Misc 2d 253; *Mantella v Mantella,* 268 AD2d 852; *Matter of Iannone,* 104 Misc 2d 5; *Matter of Gordon v Bialystoker Ctr. & Bikur Cholim,* 45 NY2d 692; *Ten Eyck v Whitbeck,* 156 NY 341; *Cowee v Cornell,* 75 NY 91; *Hennessey v Ecker,* 170 AD2d 650; *Matter of Bumbaca,* 182 AD2d 756; *Matter of Connelly,* 193 AD2d 602.) IV. The Salvation Army presented no evidence that the power of attorney was the product of undue influence and never disputed that the hearing was limited to ascertaining the validity of the power of attorney. (*Matter of Walther,* 6 NY2d 49; *Children's Aid Socy. of City of N.Y. v Loveridge,* 70 NY 387; *Matter of Banks,* 11 AD3d 307.) V. Even if respondents bore the burden of proving that the power of attorney was not the product of undue influence, they met that burden with expert medical testimony that decedent was competent and the notary attorney's testimony that decedent executed the instrument under circumstances showing no indicia of coercion. (*Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund,* 90 NY2d 139; *Schou v Whiteley,* 9 AD3d 706.)

*Eliot Spitzer, Attorney General,* New York City (*Mariya S. Treisman, Caitlin J. Halligan, Michelle Aronowitz* and *Gerald A. Rosenberg* of counsel), in his statutory capacity under EPTL article 8. I. An agent authorized to make gifts pursuant to a short form power of attorney has a fiduciary duty to the principal and may make gifts only for purposes he reasonably deems to be in the best interest of the principal. (*Patrolmen's Benevolent Assn. of City of N.Y. v City of New York,* 41 NY2d 205; *Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington,* 97 NY2d 86; *Mantella v Mantella,* 268 AD2d 852; *Moglia v Moglia,* 144 AD2d 347; *Semmler v Naples,* 166 AD2d 751; *Matter of De Belardino,* 77 Misc 2d 253, 47 AD2d 589; *Lamdin v Broadway Surface Adv. Corp.,* 272 NY 133; *Seligman v Friedlander,* 199 NY 373.) II. Where the validity of a power of attorney is challenged because of undue influence or

fraud, courts must consider whether the nature of the relationship or the circumstances of any transaction warrant shifting the burden to the attorney-in-fact to prove freedom from fraud, deception, or undue influence. (*Matter of Greiff,* 92 NY2d 341; *Ten Eyck v Whitbeck,* 156 NY 341; *Matter of Gordon v Bialystoker Ctr. & Bikur Cholim,* 45 NY2d 692; *Sepulveda v Aviles,* 308 AD2d 1; *Mantella v Mantella,* 268 AD2d 852; *Semmler v Naples,* 166 AD2d 751; *Matter of Naumoff,* 301 AD2d 802; *Matter of Putnam,* 257 NY 140; *Matter of Connelly,* 193 AD2d 602.)

### OPINION OF THE COURT

READ, J.

Article 5, title 15 of the General Obligations Law prescribes what a statutory short form power of attorney must contain, specifies the powers that the form may authorize and defines their scope. On this appeal, we hold that an agent acting under color of a statutory short form power of attorney that contains additional language augmenting the gift-giving authority must make gifts pursuant to these enhanced powers in the principal's best interest.

### I.

On June 10, 1999, decedent George J. Ferrara, a retired stockbroker who was residing in Florida at the time, executed a will "mak[ing] no provision . . . for any family member . . . or for any individual person" because it was his "intention to leave [his] entire residuary estate to charity." Accordingly, in the same instrument he bequeathed his estate to a sole beneficiary, the Salvation Army, "to be held, in perpetuity, in a separate endowment fund to be named the 'GEORGE J. FERRARA MEMORIAL FUND' with the annual net income therefrom to be used by the Salvation Army to further its charitable purposes in the greater Daytona Beach, Florida area." On August 16, 1999, decedent executed a codicil naming the Florida attorney who had drafted his will and codicil as his executor, and otherwise "ratif[ied], confirm[ed] and republish[ed] [his] said Will of June 10, 1999." Decedent was single, and had no children. His closest relatives were his brother, John, and a sister, and their respective children.

According to John Ferrara's son, Dominick Ferrara, after decedent was hospitalized in Florida in December 1999, he and his father "were called to assist." Dominick Ferrara traveled to Florida to visit decedent, who

"told [him] he wanted to move to New York to be near his family and asked [him] to obtain Powers of Attorney for his signature so that [he] could attend to [decedent's] affairs. At [decedent's] direction [Dominick Ferrara] went to a local stationery store and obtained several Powers of Attorney which [he] filled out in [his] own words and gave to [decedent] for his review and signature. [Decedent] reviewed them and signed all of them before a Notary Public."

These Florida powers of attorney apparently authorized Dominick and John Ferrara to write checks on decedent's bank accounts and liquidate certificates of deposit; to sell and/or buy stocks and securities; and to sell decedent's Florida residence and its contents and his automobile. According to Dominick Ferrara, decedent took him to his bank in Florida, where he handed over a blue bag kept in a safe deposit box. The blue bag contained stock certificates for shares of IBM stock as well as certificates of deposit.

On January 15, 2000, Dominick Ferrara accompanied decedent on a flight from Florida to New York. He brought along the blue bag and a box containing decedent's 1998 federal income tax returns and other personal papers or records and memorabilia; he testified that there was no will among these papers, which he apparently culled after decedent's death, and that decedent never mentioned any will to him. Immediately upon arriving in New York, decedent was admitted to an assisted living facility. He was thin, malnourished and weak, and was suffering from an array of serious chronic maladies.

On January 25, 2000, 10 days later, decedent signed, and initialed where required, multiple originals of a "Durable General Power of Attorney: New York Statutory Short Form," thereby appointing John and Dominick Ferrara as his attorneys-in-fact, and allowing either of them to act separately

"IN [HIS] NAME, PLACE AND STEAD in any way which [he] [him]self could do, if [he] were personally present, with respect to the following matters [listed in lettered subdivisions (A) through (O)] as each of them is defined in Title 15 of Article 5 of the New York General Obligations Law to the extent that [he was] permitted by law to act through an agent."

Subdivisions (A) through (O) of the preprinted form listed vari-

ous kinds of transactions; in particular, subdivision (M) specified "making gifts to my spouse, children and more remote descendants, and parents, not to exceed in the aggregate $10,000 to each of such persons in any year." Decedent authorized his attorneys-in-fact to carry out all of the matters listed in subdivisions (A) through (O). Critically, decedent also initialed a typewritten addition to the form, which stated that "[t]his Power of Attorney shall enable the Attorneys in Fact to make gifts without limitation in amount to John Ferrara and/or Dominick Ferrara."

Dominick Ferrara insists that this provision authorizing him to make unlimited gifts to himself was added "[i]n furtherance of [decedent's] wishes," because decedent repeatedly told him in December 1999 and January 2000 that he "wanted [Dominick Ferrara] to have all of [decedent's] assets to do with as [he] pleased." When asked if he and decedent had discussed making gifts to other family members—including his father, John, the other attorney-in-fact—Dominick Ferrara replied that they had not, again because "[m]y Uncle George gave me his money to do as I wished." Dominick Ferrara acknowledges that decedent made no memorandum or note to this effect, and only once expressed these donative intentions in the presence of anyone else—Dominick's wife, Elizabeth. Dominick Ferrara sought out an attorney in New York City "to discuss [his] Uncle's wishes," and this attorney provided him with the power of attorney that decedent ultimately executed.

The power of attorney was notarized by an attorney with whom Dominick and Elizabeth Ferrara were acquainted. This attorney testified that she attended the signing at the Ferraras' behest, and was acting as a notary only, not as an attorney for either the Ferraras or decedent. Specifically, she rendered no legal advice to decedent, who read the form in her presence before signing it. The attorney and Dominick Ferrara generally agree that it was Dominick who explained the form's provisions to decedent; she does not recall the word "gift" having been mentioned.

Decedent's condition deteriorated. He was admitted to the hospital on January 29, 2000, and never left. Decedent died on February 12, 2000, less than a month after moving to New York, and approximately three weeks after executing the power of attorney. During those three weeks, Dominick Ferrara transferred about $820,000 of decedent's assets to himself, including the IBM stock and about $300,000 in cash from the certificates of

deposit, multiple bank accounts and the sale of the Florida property. After decedent's death, he filed a 1999 federal income tax return for decedent, and collected a refund in the amount of roughly $9,500. Dominick Ferrara testified that he does not recall what happened to any of the $300,000 in cash, but that he still owns the IBM stock.

The Salvation Army found out about decedent's will after a doctor in Florida, learning of decedent's death, contacted decedent's Florida attorney, the executor of his estate under the will, to inquire about an unpaid bill. Claiming that Dominick Ferrara had stonewalled every effort to obtain relevant information, the Salvation Army subsequently commenced a proceeding under section 2103 of the Surrogate's Court Procedure Act against Dominick Ferrara and others, seeking discovery and turnover of decedent's assets.[1] The Ferrara respondents moved to dismiss the turnover proceeding on the ground that, prior to decedent's death, Dominick Ferrara had properly transferred substantially all of decedent's assets to himself pursuant to the power of attorney. The Surrogate denied the motion, set a discovery deadline, and scheduled a hearing to determine the power of attorney's validity.

The Surrogate dismissed the petition on March 31, 2004. He first determined that decedent was competent to execute the power of attorney, and that it was properly signed, initialed and notarized in conformity with article 5, title 15 of the General Obligations Law. The Surrogate noted that there was at one time "a presumption of impropriety due to the appearance of impropriety and self dealing" when an attorney-in-fact made self-gifts (3 Misc 3d 944, 945-946 [Sur Ct, Rockland County 2004] [citation omitted]). He opined, however, that amendments to article 5, title 15 of the General Obligations Law, enacted in 1996 and effective January 1, 1997, had eliminated this presumption. Thus, "when a post-January 1, 1997 power of attorney specifically and expressly authorizes gifting by the agent to himself, the presumption of impropriety no longer applies and the burden of proving the validity of the gift is no longer on the agent" (id. at 946 [citations omitted]). As a result, "the burden of proving the invalidity of the gift is on [the Salvation Army]," and here, the Salvation Army "failed to demonstrate that the transfers pursuant to the power of attorney [were] in-

---

1. The Florida lawyer renounced his appointment as executor, and consented to issuance of letters of administration c.t.a. to the Salvation Army.

valid" (*id.*). The Surrogate further observed that article 5, title 15 directs an attorney-in-fact authorized to make annual gifts of $10,000 or less to specified beneficiaries to do so only for purposes reasonably deemed to be in the principal's "best interest." The court invited the Legislature to amend the law "to provide for the same [best interest] limitation when there is express language in the power of attorney for gifts to an agent in excess of $10,000 per year" (*id.* at 947).

The Appellate Division affirmed, seemingly concluding that while the presumption of impropriety still exists, Dominick Ferrara had overcome it solely by virtue of the power of attorney; and that "competent evidence was adduced at the hearing to support the [Ferrara] respondents' contention that the decedent specifically authorized the distribution of his funds to . . . Dominick Ferrara" (22 AD3d 578 [2d Dept 2005]). We granted the Salvation Army permission to appeal, and now reverse.

## II.

Section 5-1501 of the General Obligations Law sets out the forms creating a durable and nondurable statutory short form power of attorney (section 5-1501 [1] and [1-a] respectively).[2] By these forms, the principal appoints an attorney-in-fact to act "IN [HIS] NAME, PLACE AND STEAD" with respect to any or all of 15 categories of matters listed in lettered subdivisions (A) through (O) "as each of them is defined in Title 15 of Article 5 of the New York General Obligations Law"; specifically, the 15 categories in subdivisions (A) through (O) are interpreted in corresponding sections 5-1502A through 5-1502O of the General Obligations Law (*id.*).[3]

---

**2.** A durable power of attorney survives the principal's incapacity and disability, while a nondurable power of attorney terminates if the principal becomes incapacitated or disabled.

**3.** The 15 categories are real estate transactions (§ 5-1502A); chattel and goods transactions (§ 5-1502B); bond, share and commodity transactions (§ 5-1502C); banking transactions (§ 5-1502D); business operating transactions (§ 5-1502E); insurance transactions (§ 5-1502F); estate transactions (§ 5-1502G); claims and litigation (§ 5-1502H); personal relationships and affairs (§ 5-1502I); benefits from military service (§ 5-1502J); records, reports and statements (§ 5-1502K); retirement benefit transactions (§ 5-1502L); gifts to specified beneficiaries not to exceed $10,000 to each per year (§ 5-1502M); tax matters (§ 5-1502N); and all other matters (§ 5-1502O). Subdivision (P) on the form authorizes the attorney-in-fact to delegate any or all of the matters selected to anyone whom he chooses. Subdivision (Q), which reads "each of the above matters identified by the following letters," allows the principal to

As relevant to this case, in 1996 the Legislature amended section 5-1501 (1) to add lettered subdivision (M), authorizing the attorney-in-fact to "mak[e] gifts to [the principal's] spouse, children and more remote descendants, and parents, not to exceed in the aggregate $10,000 to each of such persons in any year" (see L 1996, ch 499, § 1). Section 5-1502M construes this gift-giving authority

> "to mean that the principal authorizes the agent . . . [t]o make gifts . . . either outright or to a trust for the sole benefit of one or more of [the specified] persons . . . *only for purposes which the agent reasonably deems to be in the best interest of the principal*, specifically including minimization of income, estate, inheritance, generation-skipping transfer or gift taxes" (General Obligations Law § 5-1502M [1] [emphasis added]).

Such gifts may not exceed $10,000 "unless the statutory short form power of attorney contains additional language pursuant to section 5-1503 of the general obligations law authorizing gifts in excess of said amount or gifts to other beneficiaries" (*id.*). Section 5-1503 (2), in turn, permits "additional language" that "[s]upplements one or more of the powers enumerated in one or more of the constructional sections [§§ 5-1502A—5-1502O] in [title 15] with respect to a subdivision [(A)-(O)] of the statutory short form power of attorney . . . affirmatively chosen by the principal, by specifically listing additional powers of the agent."

Thus, section 5-1502M unambiguously imposes a duty on the attorney-in-fact to exercise gift-giving authority in the best interest of the principal. Nothing in section 5-1502M indicates that the best interest requirement is waived when additional language increases the gift amount or expands the potential beneficiaries pursuant to section 5-1503. The Ferrara respondents argue—and the Surrogate seemed to agree—that because section 5-1503 (2) does not also contain a best interest requirement, an attorney-in-fact has no obligation to act in the principal's best interest unless the additional language explicitly so directs. But section 5-1503 (2) states that the "additional language" may "[s]upplement[ ] one or more of the powers enumerated in one or more of *the constructional sections*" (emphasis added). By referring to the constructional sections,

---

list the letters of all the matters authorized and then to initial in one place on the document, as decedent did here, rather than separately initial each selected lettered subdivision.

section 5-1503 (2) incorporates their limitations into any additional language supplementing a defined power, including the gift-giving authority interpreted by section 5-1502M. This is consistent with section 5-1503 (3), which permits "additional language" to be added to the statutory short form power of attorney in order to make "some additional provision which is *not inconsistent with* the other provisions of the statutory short form power of attorney" (emphasis added). The Legislature intended section 5-1503 to function as a means to customize the statutory short form power of attorney, not as an escape hatch from the statute's protections.

Legislative purpose and history also support this reading of these provisions. The Legislature enacted the 1996 amendments to "clarify and simplify" existing law while protecting principals from abuse (Mem in Support of 1996 NY Assembly Bill A 10754; *see also* Bill Jacket, L 1996, ch 499). The amendments added powers "to deal with tax matters, and retirement benefit transactions, and to make gifts to named relatives, not to exceed $10,000 per year" (Mem in Support of 1996 NY Assembly Bill A 10754). By making these powers explicit and defining their scope, the amendments sought to "make it clearer when these powers are granted, and allow the principal to focus specifically on these issues" (*id.*). At the same time, to prevent abuse and overreaching, the amendments "add[ed] language to the interpretive sections of the law to make clear the scope of the new powers relating to tax and retirement planning and gifting" (*id.*).

Section 5-1502M, the constructional section governing gift giving, explains at subdivision (1) that authority to make gifts in the best interest of the principal includes "minimization of income, estate, inheritance, generation-skipping transfer or gift taxes." As this language shows, the purpose of the gift-giving authority is to allow an attorney-in-fact to carry out the principal's intentions to use gifts as part of a financial or estate plan, which will often involve taking advantage of certain tax provisions. In fact, the amount the attorney-in-fact is permitted to gift under subdivision (M) of the form—$10,000 per qualified beneficiary per year—tracks the federal annual gift-tax exclusion in effect in 1996. In short, the Legislature sought to empower individuals to appoint an attorney-in-fact to make annual gifts consistent with financial, estate or tax planning techniques and objectives—not to create gift-giving authority generally, and certainly not to supplant a will.

As further evidence of this intent, subdivision (M) of the form includes only the closest of potential familial beneficiaries. While the attorney-in-fact may make gifts to himself if he qualifies as a beneficiary, the statute focuses on the close family members, not on the attorney-in-fact. Thus, the attorney-in-fact is not excluded, but the statute includes the best interest requirement to serve the statute's purpose and to prevent abuse.

Finally, the best interest requirement is consistent with the fiduciary duties that courts have historically imposed on attorneys-in-fact. "[A] power of attorney . . . is clearly given with the intent that the attorney-in-fact will utilize that power for the benefit of the principal" (*Mantella v Mantella*, 268 AD2d 852, 852 [3d Dept 2000] [internal quotation marks and citation omitted]). Because "[t]he relationship of an attorney-in-fact to his principal is that of agent and principal . . . , the attorney-in-fact must act in the utmost good faith and undivided loyalty toward the principal, and must act in accordance with the highest principles of morality, fidelity, loyalty and fair dealing" (*Semmler v Naples*, 166 AD2d 751, 752 [3d Dept 1990] [internal quotation marks and citations omitted]).

In short, whether the gift-giving power in a statutory short form power of attorney is limited to the authority spelled out in lettered subdivision (M) in section 5-1501 (1), or augmented by additional language in conformity with section 5-1503, the best interest requirement remains. Thus, Dominick Ferrara was only authorized to make gifts to himself insofar as these gifts were in decedent's best interest, interpreted by section 5-1502M as gifts to carry out the principal's financial, estate or tax plans. Here, Dominick Ferarra clearly did not make gifts to himself for such purposes. Rather, he consistently testified that he made the self-gifts "[i]n furtherance of [decedent's] wishes" to give him "all of his assets to do with as [Dominick] pleased."[4] The term "best interest" does not include such unqualified generosity to the holder of a power of attorney, especially where the gift virtually impoverishes a donor whose estate plan, shown by a recent will, contradicts any desire to benefit the recipient of the

---

4. Because Dominick Ferrara did not satisfy his fiduciary duty under General Obligations Law §§ 5-1501 and 5-1503 to make gifts in decedent's best interest, we need not and do not reach the additional issue raised by the Salvation Army and Attorney General, appearing in his capacity as statutory intervenor; namely, whether the burden of proof shifted to Dominick Ferrara to establish by clear evidence that his self-dealing (both in executing the power of attorney and making the gifts to himself) was free from fraud, deception or undue influence.

gift. Accordingly, the order of the Appellate Division should be reversed, without costs, and the matter remitted to Surrogate's Court for further proceedings in accordance with this opinion.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSEN-BLATT, GRAFFEO and R.S. SMITH concur.

Order reversed, etc.