OPINION OF THE COURT
Edward W. McCarty III, J.
This is a decision after a hearing in these accounting proceedings of Joan Conklin as executor and attorney-in-fact. Testimony was taken from an attorney and Lori Conklin, the daughter of the executor and the coagent under one power of attorney and a successor agent for the decedent under a second power of attorney. The issues at the hearing were whether the agent(s) appointed by the decedent in these powers of attorney acted appropriately when they: closed out multiple Totten trust accounts; sold the decedent’s specifically bequeathed cooperative apartment; paid $20,000 allegedly for the renovation of one of the agent’s bathrooms; and paid themselves compensation as agents. As a result of the actions of the agents, the decedent’s entire estate went to the accounting party, Joan Conklin, who was also an agent under both powers of attorney. Joan Conklin was not available to testify at the hearing as she is a resident of a nursing home.
Seldom does the court have before it a proceeding where almost every issue regarding health care planning for an elderly, incapacitated person is seen. Questions regarding *293 statutory powers of attorney, gifting authority, Totten trust accounts, Medicaid planning, fiduciary obligations, testamentary intent, ademption of specific proceeds and whether the drafting attorney was representing the principal or the agent are all present in this proceeding. This matter has further illuminated gaps in the law as well as areas that need clarification.
The decedent, Julius Gargani, died on August 30, 2010. He was survived by two children, Norman Gargani and Regina Demitrack. The decedent’s last will and testament dated December 9, 2003 was admitted to probate by this court on February 10, 2011 and letters testamentary issued to Joan Conklin. The decedent’s will provided, in pertinent part, for all of his personal savings accounts, including his checking account as well as his personal belongings, to go to Joan Conklin. Article Fourth provided for the bequest of
“all of the sales proceeds from the sale of my ownership interest in the cooperative apartment . . . which is to be sold by the Executrix of my estate as soon as practicable upon my demise, and to be divided equally . . . amongst my son, Norman Gargani, my daughter, Regina Demitrack and my ex-spouse Regina Gargani.”
The residue of the estate was bequeathed to Joan Conklin.
The first witness to testify was the attorney. The attorney testified that he was contacted by Lori Conklin who said she needed a power of attorney for the decedent as well as Medicaid planning. The attorney scheduled a meeting with Lori Conklin and her mother, Joan Conklin. Lori Conklin subsequently testified that at almost every meeting with the attorney, present were her mother, her brother and her brother’s wife. The decedent was not present at any of these meetings. The purpose of the meeting, according to the attorney, was to arrange for the drafting and execution of a new power of attorney and to provide Medicaid planning. The attorney testified that he sent a letter to Lori Conklin in which he outlined his plan for Mr. Gargani. The lawyer recommended that the decedent’s cooperative apartment be sold and the net proceeds deposited into an account in the name of Julius Gargani. The lawyer advised Ms. Conklin in the letter that the account could be a joint account with Joan Conklin or Lori Conklin. With regard to the decedent’s bank accounts, the attorney advised that the various accounts be consolidated and that “for the time being, when the new account is opened the designated beneficiary, ‘in trust *294 for person,’ can remain the same.” Further discussions regarding transfers for future Medicaid planning, according to the attorney, would be addressed at a later date.
The attorney further testified that he reviewed an existing power of attorney and recommended that the decedent execute a new power of attorney as the other power of attorney did not contain a major gifts rider. The attorney testified that subsequent to the meeting, he believed that he had a telephone call with the decedent wherein they discussed the drafting of the power of attorney.
The attorney testified that he met the decedent for the first time on March 24, 2010 at a nursing home or a rehabilitation facility in which the decedent was residing. Also present at the meeting were the attorney’s father, Lori Conklin, Joan Conklin and Ann Marie Conklin. The purpose of the meeting was to execute the second power of attorney. The attorney testified that he had a discussion with the decedent about liquidating the cooperative apartment and consolidating the accounts. The attorney thought that the entire meeting took approximately 30 minutes.
After the execution of the second power of attorney, the attorney testified that he had one additional conversation with the decedent on the date of the closing of the cooperative apartment when the decedent was contacted to ensure that he was alive. The net proceeds from the sale of the cooperative apartment in the approximate amount of $125,000 were deposited into an account in the decedent’s name.
With regard to Medicaid planning, the attorney testified that he had further discussions with Joan Conklin and Lori Conklin regarding Medicaid planning. When asked whether the attorney advised the decedent about the proceeds from the sale of the cooperative apartment going to Joan Conklin, the attorney replied that he and the decedent talked about Medicaid planning, not about his testamentary plan. He stated that his firm was not retained to do estate planning and as such he never discussed with the decedent where his money should go. The attorney repeatedly stated that he was the attorney for the decedent despite the fact that his initial contact was with Lori Conklin, his subsequent meetings were with various members of the Conklin family and his only contact with the decedent was a 30-minute meeting and two phone calls.
The attorney testified that he told both Joan Conklin and Lori Conklin that they could charge a fee for acting as agents *295 for the administration of Mr. Gargani’s financial affairs. He did not recall if he told them what the amount of the fee should be.
Lori Conklin testified that the decedent was her mother’s cousin and her mother’s “significant other” and that they had lived together for approximately 13 years. Ms. Conklin testified that she strongly disliked the decedent and resented the way he treated her mother. Ms. Conklin testified that at some point in January 2010, the decedent was hospitalized. In February of 2010, a power of attorney was executed and according to Ms. Conklin, she and her mother were appointed agents by the decedent. Each was given the authority to act separately.
Ms. Conklin testified that she arranged for the meetings with the attorney and that the decedent never discussed finances with her. With regard to the decedent’s bank accounts, she testified that she found the bankbooks in the decedent’s apartment, took possession of the bankbooks, closed some of the accounts and deposited the proceeds into an account in the decedent’s name.
The evidence and testimony adduced at the trial showed the following: on March 15, 2010, acting under the first power of attorney, Lori Conklin closed an account held in the decedent’s name in trust for the decedent’s daughter, Regina Demitrack, in the total amount of $10,001.04. On March 26, March 27, and April 23, 2010, acting under the second power of attorney, Lori Conklin closed bank accounts in the decedent’s name in trust for Regina Gargani, Norman Gargani, Regina Demitrack and Joan Stucko. The combined total of the Totten trust accounts that were closed was $165,302.76. The funds were deposited into an account in the decedent’s name. With regard to the decedent’s accounts that were in trust for her mother, Ms. Conklin testified that she left those alone. She also testified that she did not close some small Totten trust accounts for the Gargani family that amounted to approximately $40,000. Her mother’s Totten trust accounts amounted to approximately $60,000. Ms. Conklin testified, incredibly, that the reason she did not liquidate the accounts in trust for her mother was because she wanted to start with the larger accounts and save the “little ones” for later.
With regard to the decedent’s cooperative apartment, the apartment was sold on August 12, 2010. Ms. Conklin testified that the net proceeds in the approximate amount of $125,000 were deposited into an account in the decedent’s name. Mr. Gargani died on August 30, 2010. Ms. Conklin testified that on *296 September 8, 2010, nine days after the decedent died, she used the power of attorney to close out the decedent’s account, she then used “[$] 90,000 to [$]99,000” to pay off her mother’s home equity loan and the remaining $100,000 was “disbursed for Medicaid planning.” The account statements offered into evidence at the hearing show that $100,000 was deposited into an account with Lori Conklin and Joan Conklin. She testified that she had never “read” the decedent’s will, but that she had “heard” about it which is why she knew that all the decedent’s money could go to her mother. Lori Conklin further testified that her mother’s home was transferred to her brother and her mother’s other assets were transferred for Medicaid planning. She claimed, incredibly, to have no knowledge about where the $100,000 in the joint account she held with her mother (funded by the decedent’s assets) had gone.
As set forth previously, the following accounts were closed by the agent and/or agents:
TD Bank account in trust for Regina Demitrack, balance of $10,001.04, closed March 15, 2010;
Ridgewood Savings Bank savings account in trust for Regina Gargani, balance of $4,009.34, closed March 26, 2010;
Ridgewood Savings Bank savings account in trust for Regina Gargani, balance of $35,178.70, closed March 26, 2010;
Ridgewood Savings Bank savings account in trust for Regina Gargani, balance of $11,025.70, closed March 26, 2010;
Ponce De Leon Federal Bank account in trust for Norman Gargani, balance of $50,043.81, closed March 27, 2010;
Ponce De Leon Federal Bank account in trust for Regina Demitrack, balance of $50,043.65, closed April 23, 2010; and
Capital One account in trust for Joan Stucko, balance of $5,000.52, closed April 23, 2010.
The bank account at TD Bank in trust for Regina Demitrack was closed by Lori Conklin, who used a power of attorney dated February 13, 2010. With regard to the appointment of Lori Conklin as an agent for the decedent, the instrument failed on its face. As set forth in General Obligations Law § 5-1501B, to be valid, a statutory short form power of attorney must be signed and dated by any agent with the signature of the agent duly acknowledged in the manner prescribed for the acknowledgment of a conveyance of real property (General Obligations Law § 5-1501B [1] [c]). The power of attorney in question has Lori Conklin’s name handwritten into the document next to *297 her mother’s name. Joan Conklin’s signature is properly acknowledged but the document is silent with regard to Lori Conklin. As such, the power of attorney was not valid with regard to her and she had no authority to close the account. Further, even if the power of attorney had been properly executed and acknowledged, as set forth more fully below, the power of attorney did not have the appropriate language to allow her to close the Totten trust account.
On March 24, 2010 a second power of attorney was executed by the decedent. This power of attorney named Joan Conklin as the agent and Lori Conklin as the successor agent. It was properly executed and acknowledged. Also executed at the same time was amajor gifts rider (see General Obligations Law § 5-1514). Pursuant to the major gifts rider, the decedent authorized his agent to make gifts to his spouse, children and more remote descendants in any amount. He also gave his agent the authority to make gifts to himself or herself in any amount, yet the authority is apparently qualified by a subsequent paragraph wherein the agent is only authorized to make gifts to the principal’s spouse, children and descendants. The rider further includes the authority, among others, to compensate his agent, pay household and home health aide employees and make transfers and changes to trusts. The authority to compensate the agent allows for the agent to “retain such compensation, notwithstanding any determination that the amount paid exceeded the fair market value of said services.”
Lori Conklin, acting as an agent for the decedent pursuant to the second power of attorney, proceeded to liquidate the aforementioned Totten trust accounts.
Totten trust accounts are governed by EPTL 7-5.1 et seq. A Totten trust account may be terminated by the depositor during his or her lifetime only by means of withdrawals from or charges against the account made or authorized by the depositor or by a writing which specifically names the beneficiary and the financial institution (EPTL 7-5.2 [1]). Where a depositor dies without “some decisive act or declaration of disaffirmance” the presumption arises that an absolute trust is created (Matter of Totten, 179 NY 112, 126 [1904]).
The General Obligations Law provides the following:
“with respect to totten trust accounts existing at the creation of the agency, the authority granted hereby shall not include the power to add, delete, or otherwise change the designation of beneficia *298 ries in effect for any such accounts, unless the authority to make such additions, deletions or changes is conveyed in a statutory major gifts rider to a statutory short form power of attorney” (General Obligations Law § 5-1502D [1] [b]).*
The major gifts rider section of the General Obligations Law is clear that an agent may not terminate or modify a bank account in trust form unless such authority is expressly given (General Obligations Law § 5-1514 [3] [c] [3]; [4] [a]).
The gift rider which accompanies the statutory form power of attorney must be witnessed by two persons in the manner described at EPTL 3-2.1 (a) (2) (formal requirements of the execution and attestation of wills; General Obligations Law § 5-1514 [9] [b]). The level of formality is consistent as for wills and is “designed to draw the principal’s attention to the importance of the document and its potential effect on his or her estate” (The New York State Law Revision Commission Report on the Statutory Gifts Rider to Powers of Attorney, Sept. 1, 2010 at 12). The statute was specifically amended to call the principal’s attention to the significance of his or her decision {id. at 10).
The question thus arises as to whether an agent is authorized to close a Totten trust account when the authority is not spelled out clearly. The New York State Law Revision Commission Report on Powers of Attorney addressed this issue and noted that, although it was suggested that all of the powers listed under General Obligations Law § 5-1514 appear on the face of the major gifts rider, this suggestion was purposefully not adopted. The Commission reported “such a list would not be helpful to a principal who would be unlikely to understand the meaning and scope of such authority without legal advice . . . . It was thought that the best course was for a principal to have the assistance of an attorney when contemplating gifting authority.” (The New York State Law Revision Commission Report on Powers of Attorney, Jan. 1, 2012 at 12.)
Statutes that relate to the same thing, even though passed at different times or amendatory of another, are said to be “in pari materia” and are to be construed together (McKinney’s *299 Cons Laws of NY, Statutes § 221 [a], [b]). The provisions are to be given “uniformity of application and construction, and applied harmoniously and consistently” (McKinney’s Cons Laws of NY, Statutes § 221 [b], Comment). Statutes passed earlier are properly considered as illuminating the intent of the legislature in passing later acts (McKinney’s Cons Laws of NY, Statutes § 222, Comment). Pursuant to EPTL 7-5.2 (1), a definitive act by the depositor is required to close a Totten trust account.
In reading the General Obligations Law and the EPTL together, it is clear that the authority to close a Totten trust account must be expressly given in the major gifts rider. The language must provide in no uncertain terms that the agent is given the authority to open, modify or terminate a bank account in trust form and to change the beneficiary or beneficiaries of such account. The evident purpose of both statutes is that any action taken by an agent with regard to a Totten trust account be carefully and deliberately taken after consultation with the principal. This court finds that without the appropriate language, the agent was without the authority to close out the Totten trust accounts.
Further, even if the agent had the authority, the relationship of an agent to the principal is such that the agent “must act in the utmost good faith and undivided loyalty toward the principal, and must act in accordance with the highest principles of morality, fidelity, loyalty and fair dealing” (Semmler v Naples, 166 AD2d 751, 752 [3d Dept 1990]). An agent, moreover, must always act in the best interest of the principal (Matter of Ferrara, 7 NY3d 244, 254 [2006]). The agent is further directed in the General Obligations Law to act according to instructions of the principal and to avoid conflicts of interest (General Obligations Law § 5-1505 [2] [a] [1]). In the instant proceeding, the agent breached her fiduciary duty when she closed out almost every Totten trust account except for the accounts in trust for her mother.
The second question before the court is whether the proceeds from the sale of the cooperative apartment should be distributed to the legatees under the will either because the proceeds did not adeem or because the agent breached her fiduciary duty. As set forth previously, the decedent’s cooperative apartment was sold on August 12, 2010 by his agents under the second power of attorney. The decedent’s will provided that his cooperative apartment be sold after his death and the proceeds *300 distributed to his children and his ex-wife. After the cooperative apartment was sold, the proceeds were deposited into an account in the decedent’s name. A little over two weeks later, the decedent died.
With regard to ademption, the courts have long wrestled with this issue. The rule in New York is that “the bequest fails and the legatee takes nothing if the article specifically bequeathed has been given away, lost or destroyed during the testator’s lifetime” (Matter of Wright, 7 NY2d 365, 367 [I960]). Moreover, “it matters not whether this came to pass because of an intentional and voluntary act on the part of the testator” (id. at 368-369). When the bequest is of proceeds, the question becomes more complicated and “is an area of considerable confusion and disharmony both as to result and theory, and apparently such has been the case for a considerable length of time” (Douglas Hale Gross, Annotation, Ademption of bequest of proceeds of property, 45 ALR3d 10, § [2] [a]). In Matter of Wallace (86 Misc 2d 175 [Sur Ct, Cattaraugus County 1976]), the decedent’s will provided that his real property be sold and the proceeds divided equally. The testator subsequently sold the house and the proceeds were deposited into a bank account. The court found that since “the proceeds of sale which are extant do not constitute the legacy bequeathed, the general rule of ademption applies” and the legacy fails {id. at 180). Where specifically devised real property was conveyed during the lifetime of the testator by an agent pursuant to a power of attorney, the court held that “once the devise is found to be adeemed, the court is not permitted to substitute something else for it. This includes tracing the proceeds from the sale of real property” (LaBella v Goodman, 198 AD2d 332, 333 [2d Dept 1993] [citations omitted]).
When a committee, conservator or guardian has been appointed, EPTL 3-4.4 provides that in the case of a transfer by the committee, conservator or guardian of any property specifically disposed of by will when the testator was competent, the beneficiary of such a specific disposition becomes entitled to receive any remaining money into which the proceeds from such sale or transfer may be traced. Not included is an agent acting pursuant to a power of attorney.
It is clear from the decedent’s will that he bequeathed his cooperative apartment with the proviso that it be sold after his death and the proceeds from the sale distributed. The attorney testified that he spoke with the decedent about the need to sell *301 the apartment to effectuate Medicaid planning. It is unfortunate that the act taken by an agent, who ultimately intended to benefit her mother and/or herself, caused the bequest to adeem, but the court is powerless under these circumstances to reach a different result. The court finds that the bequest adeemed and became part of the residuary estate.
The court cannot find, in light of the testimony at the hearing, that the agent abused her fiduciary duty when she sold the cooperative apartment. The attorney testified that the decedent understood that the property had to be sold to effectuate Medicaid planning. The courts have found that transferring assets to take advantage of eligibility for government benefits is in the best interest of the person (see Rose Mary Bailly and Barbara S. Hancock, Practice Commentaries, McKinney’s Cons Laws of NY, Book 23A, General Obligations Law § 5-1514).
The third and fourth questions, regarding the $20,000 reimbursement to an agent for alleged renovations to Joan Conklin’s bathroom and the compensation paid to the agents, need not be decided as any funds recovered would be distributed to the residuary beneficiary, Joan Conklin.
In sum, the objectants’ claim for the return of the Totten trust accounts in the total amount of $165,302.76 is granted. The unlawful conversion of the accounts occurred in March and April of 2010 and thus interest shall be computed from May 1, 2010 (CPLR 5001 [b]; see also Dwight W. Winkelman Found, v Winkelman, 219 AD2d 816 [4th Dept 1995]; Matter of Frank A.L. v Vaccarelli, 117 AD3d 740 [2d Dept 2014]) in the amount of nine percent per annum (CPLR 5004). The claim of the objectants to the proceeds from the sale of the cooperative apartment is denied.

 (As amended by L 2008, ch 644, § 6, eff Mar. 1, 2009.) The subject Totten trust accounts were in existence and these statutory provisions were in effect when the power of attorney was executed; it is therefore subject to these provisions.